792 P.2d 336

**Clifford SATO and Bettie Sato, husband and wife, Plaintiffs–Appellants,**

v.

**Peter S. SCHOSSBERGER, Defendant–Respondent,**

**and**

**St. Anthony Community Hospital, Defendant.**

No. 18416.

Supreme Court of Idaho.

May 17, 1990.

Petersen, Moss, Olsen, Meacham & Carr, Idaho Falls, for plaintiffs-appellants. William C. Carr argued.

Merrill & Merrill, Pocatello, for defendant-respondent. Wesley F. Merrill argued.

JOHNSON, Justice.

This is a medical malpractice case that was dismissed for lack of prosecution under I.R.C.P. 40(c). We affirm the dismissal, except as to the claim that the doctor did not properly and fully advise the patient of the risks she was facing in the surgery. We hold that it was an abuse of discretion for the trial court to dismiss this claim.

## I. THE BACKGROUND AND PRIOR PROCEEDINGS.

In July 1978 Bettie Sato (the patient) consulted Dr. Peter Schossberger (the doctor) about pain she was experiencing. In September 1978 the doctor performed surgery to sever nerves in the patient's back to relieve the pain. Later, the patient alleged that the operation was not only unsuccessful in relieving her pain, but also that it caused new permanent physical impairments.

The patient and her husband filed a lawsuit against the doctor in July 1981. The complaint alleged that the doctor was negligent in diagnosing the cause of the patient's pain, in performing the surgery and in properly and fully advising the patient of the risks she was facing in the surgery.

The trial court notified the patient in July 1982 and in October 1985 that no action had been taken on her case against the doctor for one year or more and that the case would be dismissed, if no affirmative action had been taken by a stated date. On each of these occasions the patient took action that forestalled the dismissal. On December 3, 1987, the trial court notified the patient that no action had been taken on her case against the doctor for six months and that if no affirmative action had been taken by December 22, 1987, the case would be dismissed under I.R.C.P. 40(c).

On December 18, 1987, the attorney for the patient wrote to the trial court enclosing a request for trial setting that he said had been filed with the clerk of the court. The letter stated that the attorney had also filed interrogatories addressed to the doctor. The letter concluded:

Hopefully this will constitute sufficient affirmative action to preclude dismissal. If such is not the case and you require something more than this, please let me know so that I may take that action so as to prevent dismissal.

I apologize for the delay in pursuing this matter. There have been several reasons for the delay, all of which I could present by affidavit if such is necessary.

The request for trial setting and the interrogatories were filed by the clerk of the court on December 21, 1987. In the request for trial setting the patient's attorney stated: "All discovery has not yet been completed by the parties, but counsel for plaintiffs anticipates that all discovery can be completed within the next ninety days."

On December 22, 1987, the trial court issued an order setting a pre-trial conference for February 22, 1988. The order directed the parties to be prepared at the pre-trial conference to discuss all items enumerated in I.R.C.P. 16 and to have a list of all witnesses to be called and copies of all exhibits to be offered at trial and to be prepared to discuss specific trial dates.

On January 7, 1988, the doctor's attorney submitted a response to request for trial setting. This response accepted some of the information supplied in the request for trial setting. In addition it listed the trial dates not available to the doctor's attorney. The response also stated that the patient

had not made answers to the doctor's interrogatories served in November 1985, despite several oral requests, and that the doctor could not proceed with discovery until the disclosure of experts, lay witnesses, and claims had been made in the answers to the interrogatories. The response stated that discovery could be completed within approximately four months after the patient answered the interrogatories.

On January 12, 1988, the doctor's attorney submitted a motion to compel the patient to answer the doctor's interrogatories and a motion for a protective order allowing the doctor thirty days within which to answer the patient's interrogatories. The motion for protective order stated that the reason for the requested delay in answering the patient's interrogatories was that the doctor must first receive the patient's answers to his interrogatories before he could prepare his answers.

On February 8, 1988, the trial court heard arguments on the doctor's motions to compel answers and for a protective order. At the conclusion of the hearing, the trial court granted the motion for protective order and ordered that the patient would be given until February 22, 1988, to submit answers to the doctor's interrogatories. The order stated that if the answers were not submitted by that date the trial court would entertain and grant a motion to dismiss. The order concluded by stating that if the answers were submitted on or before February 22, the pre-trial conference scheduled for that date would be continued to give the doctor's attorney an opportunity to deal with the answers. On February 19, 1988, the patient submitted answers to the doctor's interrogatories. On February 22, 1988, the doctor moved to dismiss the complaint for failure of the patient to fully answer or respond to the interrogatories. The motion stated that it was based on the files and records in the case, on I.R.C.P. 37(a) and (b), and on the trial court's order of February 8, 1988. The motion alleged that the answers were incomplete, evasive, and failed to provide answers, especially as to the names of the expert witnesses. Two days later the doctor supplemented the motion to dismiss by adding that the action be dismissed pursuant to I.R.C.P. 40(c).

On February 29, 1988, the trial court heard arguments on the doctor's motion to dismiss. At the conclusion of the hearing the trial court stated:

[T]his case was filed in 1981 and is seven years old come July of this year and I think that alone, given the history of the case and my most recent order, and the answers to the interrogatories, which I do believe are inadequate, requires that *this case be dismissed for lack of prosecution.* Now, although that may give you an issue to go appeal on, I do believe that as a practical matter, you are not required to have an expert witness and you may dispute that but I do believe that under the circumstances of this particular case and its entire history that *there has been a lack of diligent prosecution* in this case and must be dismissed at this time. (Emphasis added.)

The trial court directed the doctor's attorney to prepare a formal order of dismissal for the court's signature. On March 3, 1988, the trial court signed the order of dismissal prepared by the doctor's attorney. The order recited the history of the case and stated that the patient's answers to interrogatories were inadequate and not in compliance with I.R.C.P. 37(a). The order concluded: "Based on the above record, and upon the failure of the plaintiff to comply with the minute entry and order of February 8, 1988, and upon the clear showing of lack of prosecution, the case was ordered dismissed."

On March 15, 1988, the patient submitted a motion for reconsideration of the dismissal, supported by an affidavit of the patient's attorney. In this affidavit the patient's attorney stated that at the hearing on February 29, 1988, the patient's attorney had told the trial court that:

1. the patient had been unable to make arrangements for an expert witness to testify on her behalf because of her inability to raise the necessary funds;

2. the patient was prepared to go to trial without the use of an expert witness, basing her case solely on the testi-

mony of the doctor and the other two doctors who had been involved with him in the diagnosis and treatment of the patient, together with cross-examination of these witnesses from recognized medical treatises;

3. the main basis of the patient's case would be her claim that the doctor failed adequately to inform her of the risks attendant to the surgery;

4. the doctor's deposition testimony as to the nerves that he cut and didn't cut, and the areas innervated by those nerves, together with the patient's testimony of the consequences of her surgery, would create a prima facie case on the issue of whether or not the doctor cut nerves other than those that the doctor intended to cut.

The doctor's attorney submitted an affidavit in opposition to the motion for reconsideration stating that on several occasions the attorneys for the patient had said they could not answer the doctor's interrogatories because the plaintiff did not as yet have an expert witness.

A hearing on the motion for reconsideration was held on April 5, 1988. In denying the motion for reconsideration the trial court stated:

First of all, I do acknowledge that the sanction of dismissal is very hard but the sanction in this case from my perspective as the Court, when viewed in the context of the history of this case, not merely because the interrogatories were not answered, in my opinion, adequately, it must be done in the context of this case—the fact that this case was filed ... a little more than halfway through [my predecessor's] last term in office; and I'm well into my second term. And during that entire time period, the case's movement, as is reflected in the record, has been more from the Court sending out notices of possible dismissal, three of them. And that appears to be when activity would take place. ... I think it's in that context that the entire case must be viewed and the entire history of the length of time and the way the case has been prosecuted. ... And it's in that

context that the sanction of dismissal was utilized by me.

... I do believe that *the inordinate delay is simply unacceptable* and that the case must be dismissed at this time.... (Emphasis added.)

The patient appealed from the order of dismissal and from the order denying reconsideration. We assigned the case to the Court of Appeals. Following an opinion of the Court of Appeals reversing the dismissal, we granted review.

At the oral argument before this Court, the doctor's attorney stated that the order of dismissal should be considered as having been issued pursuant to I.R.C.P. 40(c). The patient's attorney stated in oral argument that he had authority from his clients to represent that if the dismissal were reversed, the only claim that would be pursued on remand would be the claim that the doctor did not properly and fully advise the patient of the risks she was facing in the surgery.

## II. THE ROLE OF THIS COURT IN REVIEWING A DECISION OF THE COURT OF APPEALS.

We first take this opportunity to clarify the role of this Court in reviewing a decision of the Court of Appeals. I.A.R. 108 provides that the Court of Appeals shall hear and decide all cases assigned to it by this Court. I.A.R. 118 allows any party to a proceeding aggrieved by an opinion or order of the Court of Appeals to petition this Court to review the opinion or order. Review is granted, if a majority of this Court votes to grant the petition. We may also grant review of an opinion or order of the Court of Appeals on our own motion pursuant to I.A.R. 120.

■ If we decide to review a decision of the Court of Appeals, we ordinarily consider all the issues presented to the Court of Appeals. Occasionally, we may decide to address less than all of the issues presented to the Court of Appeals. In that case, we advise the parties of the issues we will address. As to the issues we decide to address, we consider that we are hearing

the matter in the first instance, not merely considering the correctness of the decision of the Court of Appeals. If, as in this case, the issues presented to the Court of Appeals concerned a decision of a district court, we consider the correctness of the district court's decision. While we value the opinion of the Court of Appeals for the insight it gives us in addressing the issues presented on appeal, we do not focus on the opinion of the Court of Appeals, but rather on the decision of the district court. That is the focus we have given to this case.

We do find in some cases that after considering the decision of the trial court following the oral argument before this Court, the opinion of the Court of Appeals is appropriate to state our views, in whole or in part. *E.g., Burrup v. Stanger,* 115 Idaho 114, 765 P.2d 139 (1988). In many cases, however, we find it more appropriate to write our own opinion. That is how we have chosen to proceed in this case.

III. IT WAS INAPPROPRIATE FOR THE TRIAL COURT TO DISMISS THE ACTION PURSUANT TO I.R.C.P. 40(c).

The patient asserts that it was inappropriate for the trial court to have dismissed the action under I.R.C.P. 37, 40(c) or 41(b). In oral argument before this Court, the doctor's attorney contended that the dismissal was granted under I.R.C.P. 40(c) only. For several reasons we find this characterization of the trial court's action is persuasive:

(1) It was the doctor's motion upon which the trial court acted in dismissing the action. While the initial motion invoked I.R.C.P. 37 as its basis, the motion was supplemented to include I.R.C.P. 40(c) as an additional basis. The doctor did not move to dismiss under I.R.C.P. 41(b).

(2) In granting the dismissal at the hearing on February 29, 1988, the trial court said that the case was dismissed "for lack of prosecution."

(3) The doctor's attorney drafted the order signed by the trial court dismissing the action. While the order refers to the patient's answers to interrogatories as being inadequate and not in compliance with I.R.C.P. 37(a) and the failure to comply with the order of February 8, 1988, the order also refers to "the clear showing of lack of prosecution."

(4) In denying reconsideration of the dismissal the trial court concluded that "the inordinate delay is simply unacceptable."  ·

Therefore, we accept the statement of the doctor's attorney that the dismissal was granted under I.R.C.P. 40(c) only. In stating this conclusion, we do not intend to imply that the dismissal would have been appropriate or inappropriate under I.R.C.P. 37 or 41(b). We simply accept the statement of the doctor's attorney that those rules were not the basis for the dismissal.

I.R.C.P. 40(c) provides:

**Rule 40(c). Dismissal of inactive cases.**—In the absence of a showing of good cause for retention, any action, appeal or proceeding, except for guardianships, conservatorships, and probate proceedings, in which no action has been taken or in which the summons has not been issued and served, for a period of six (6) months shall be dismissed. Dismissal pursuant to this rule in the case of appeals shall be with prejudice and as to all other matters such dismissal shall be without prejudice. At least 14 days prior to such dismissal, the clerk shall give notification of the pending dismissal to all attorneys of record, and to any party appearing on his own behalf in the action or proceeding subject to dismissal under this rule.

We construe this rule to be a case management tool for our trial courts.

In *Kirkham v. 4.60 Acres of Land,* 100 Idaho 781, 605 P.2d 959 (1980), we held that the trial court's exercise of the authority to dismiss a case because of a failure to prosecute "will not be disturbed on appeal unless it is shown that there was a manifest abuse of discretion." *Id.* at 783, 605 P.2d at 961; *see also Agrodyne, Inc. v. Beard,* 114 Idaho 342, 345, 757 P.2d 205, 208 (Ct. App.1988) (review denied).

■ Here, we conclude that the trial court abused its discretion in dismissing the action pursuant to I.R.C.P. 40(c). The notice of pending dismissal required the patient to take "affirmative action" by December 22, 1987. Before that date the patient requested a trial setting and submitted interrogatories to the doctor. On December 22 the trial court ordered a pretrial conference to be held on February 22, 1988. These actions fulfilled the requirement of the trial court's notice. They were "affirmative action."

We point out that the notification of pending dismissal served on the parties by the trial court was in different terms than I.R.C.P. 40(c) contemplates. The rule states that where no action has been taken in a case for a period of six months, the case shall be dismissed "[i]n the absence of a showing of good cause for retention" after at least fourteen days notice of the pending dismissal. The showing of good cause as contemplated in the rule is not what the trial court's notice in this case required the patient to do to avoid dismissal. Here, the patient was only required to take affirmative action.

We also point out that the purported failure of the patient to answers the doctor's interrogatories adequately occurred almost two months after the patient had taken the affirmative action of requesting that the case be set for trial. The trial court's order of February 8, 1988, gave the patient until February 22, 1988, to submit answers to the interrogatories. When the trial court ruled on the doctor's motion to dismiss on February 29, 1988, the trial court mentioned the inadequacy of the answers but focused on the "lack of prosecution" of the case. The only specific inadequacy that the doctor's motion pointed out was the failure to name expert witnesses. The patient's answer to the interrogatory requesting the identity of the patient's expert witnesses stated:

It is anticipated that plaintiffs will call as expert witnesses Dr. Schossberger, Dr. Reese and Dr. McRoberts. Plaintiff has an appointment for an examination by another physician in early March. It is not yet known what the results of that examination will be and whether that physician will consent to testify. Counsel for the plaintiffs have also made tentative arrangements with Dr. Arthur E. Lyons of San Francisco, California to act as an expert witness. To date, however, plaintiff has not been able to pay Dr. Lyons' retainer so it is not known whether he will be available as an expert witness for plaintiff.

While we can understand the frustration of the doctor's attorney with this answer, we construe the answer as saying that the patient did not have an expert witness other than the doctor and the other two physicians who assisted him in diagnosing and treating the patient. While both the doctor's attorney and the trial court may have doubted the ability of the patient to prove a prima facie case of medical malpractice through these witnesses, it is not correct to construe this answer as inadequate. The evidence may have proved to be inadequate, but the answer was an adequate statement of the expert testimony the patient intended to present at trial. If the doctor was not willing to await the patient's attempt to prove a prima facie case at trial, the proper procedure would have been to file a motion for summary judgment.

## IV. FURTHER PROCEEDINGS WILL BE LIMITED TO THE CLAIM FOR LACK OF INFORMED CONSENT.

■ At the oral argument of this case before this Court, the patient's attorney represented that if this case were remanded, the only claim the patient would pursue is the claim that the doctor did not properly and fully advise the patient of the risks she was facing in the surgery. This representation is binding on the patient.

## V. CONCLUSION.

We vacate the order dismissing the action with regard to the claim that the doctor did not properly and fully advise the patient of the risks she was facing in the surgery and remand for further proceed-

ings. We affirm the trial court's dismissal of the other claims.

Because of the mixed result in this appeal, we award no costs on appeal.

BAKES, C.J., BISTLINE and McDEVITT, JJ., and SCHWARTZMAN, J., Pro Tem., concur.