890 P.2d 714

Charles and Barbara SPENCE, husband
and wife, Plaintiffs–Respondents–
Cross–Appellants,

v.

James B. HOWELL and Josephine H.
Howell, Defendants–Appellants–
Cross–Respondents,

and

Clifton A. Powell, Roberta G. Powell,
Jerry S. Lausmann, and Donnis
O. Lausmann, Defendants.

No. 21355.

Supreme Court of Idaho,
North Idaho October 1994 Term.

Feb. 1, 1995.

Rehearing Denied March 29, 1995.

Quane, Smith, Howard & Hull; and Bowen, Brassey, Gardner, Wetherell & Crawford, Boise, for appellants Howell. Robert T. Wetherell argued.

David H. Leroy, Boise, for appellants Powell and Lausmann.

Nevin, Kofoed & Herzfeld; Seiniger Law Offices; Givens, Pursley & Huntley, Boise, for respondents Spence. Alan Kofoed and Breck Seiniger argued.

TROUT, Justice.

This is an appeal arising from a failed venture to develop a Christian retreat near Riggins, Idaho. Suit was instituted with allegations of breach of contract, fraud, intentional infliction of emotional distress and violation of racketeering statutes. Ultimately, the jury awarded the plaintiffs $103,395 for the fraud and breach of contract claims, $200,000 for intentional infliction of emotional distress, and $300,000 in punitive damages. After the trial court ruled on post-trial motions for a new trial and JNOV, this appeal and cross-appeal were brought.

## I.

## BACKGROUND

Charles and Barbara Spence (the Spences) are ordained ministers of a church and had a dream to build a Christian retreat ranch. To achieve this goal they paid $125,000 for 550

acres of land located near Riggins. The Spences put $25,000 down on the land and agreed to pay $10,000 a year on the balance until it was paid in full. The Spences purchased the property with the help of other family members.

In 1979, the Spences met James and Josephine Howell (all future references are solely to James Howell who will be referred to as "Howell"). The Spences claim that shortly after meeting Howell, he asked if the ranch was for sale and they informed him it was not. After Spences told Howell of their plans for the property, Howell indicated that he shared their vision for the retreat ranch and that he would help develop the ranch. Thereafter on March 6, 1980, Howell wrote the Spences a letter with his ideas for the development which read as follows:

Dear Charles and Barbara,

The enclosed map is drawn by the Safeco Title Co. They are the only Title Co. in Boise that are issuing Title Insurance in Idaho County.

I have been doing a lot of praying about this retreat grounds and I have a good witness about everything except the board of directors. I think the board should be made up of men who will and can stand behind us financially. Chuck and I and men like Cliff Powell, and Jerry Lausmann, etc.

I am trying to be as transparent as I can and I hope you will pray about this and let me know.

As the people who build on the lots are resilient, and the church attendance, with the retreat ministries, everyone of us who can minister will have all they can do I am sure.

I feel that the money you and your sons have paid on the property should be reimbursed to you so everyone envolved (sic) will share equally in this effort for the Lord.

When the lot sales come in so we can start the lodge Chuck should be put on a retainer salary to oversee the building of the improvements.

I am sure God will bless you and Barbara's ministry in a greater way than ever before,

as I know what a sacrifice you and your family have made to hang on to this property for the last four years for the Lord. We love you both,

Jim & Jo Howell

Howell claims the Spences were having trouble meeting mortgage payments and that he was attempting to relieve them of the financial problems, and was simply doing them a favor by offering to help with the development of the ranch. It is undisputed that Howell drew up a subdivision plat and attempted to develop a subdivision on the ranch. The profits from the subdivision were to be used to fund the retreat. The plat was for a small portion of the Spences' land and it listed JJ & H (James and Josephine Howell) Real Estate as the developer.

The subdivision did not happen according to plan, and the parties discussed other options to finance the development of the land. Howell then introduced the Spences to Clifton Powell (Powell) and Jerry Lausmann (Lausmann), people Howell was in business with acquiring and developing land. Howell represented that these men would like to contribute financially to the development of the ranch. Powell and Lausmann claim they never intended to contribute to the retreat and only agreed with Howell to purchase the property outright. Howell, Powell and Lausmann all agree that at least as of the time they signed the earnest money agreement, they were in a partnership together to purchase the ranch. The Spences also believed, based upon Howell's representations, that they were part of the partnership. They also claim that Howell promised that the land would eventually be transferred into a charitable corporation, to be created later.

Howell testified he informed the Spences that Lausmann and Powell were no longer interested in investing in the property, but wished to purchase it outright. The Spences disputed this claim and maintained that a total sale of the land was never discussed. Ultimately Howell was successful in convincing the Spences that they should deed the property to the partnership for tax reasons. The parties then entered into a written earnest money agreement on May 15, 1980, and a warranty deed was executed on September

12, 1980. According to those documents, the Spences retained title to fourteen acres of the property, and the partnership of Howell, Powell and Lausmann assumed the remaining $80,000 mortgage debt, and paid off $20,000 owed on a separate loan. Howell, Powell and Lausmann contend that this was a legitimate outright purchase, while the Spences maintain the transfer was done on Howell's advice for tax purposes and that they relied on his advice because he was a real estate agent.

Prior to the transfer of land, the Spences were aware of the hydroelectric potential of the property. They believed a hydroelectric project would be developed and the profits from the project would be used to develop the retreat ranch. The Spences were not made aware that the hydroelectric project was later estimated to make a very large profit.

In December 1983, Howell assigned the hydroelectric permit to the Idaho Environmental Development Corporation, an Idaho corporation owned by Howell, Powell, and Lausmann. The Spences were not told of the assignment, and the corporation later sold the hydro project to a French consortium for more than $400,000.

After signing the Earnest Money Agreement, the Spences moved to California to live. They continued to keep in contact with the property through information received from relatives still living in the Riggins area. In February 1986, Barbara Spence wrote a letter to Howell asking him to send her the deed to the ranch because she knew the hydroelectric project was nearing completion, and worried that the ranch retreat development was taking too long. Howell never answered the letter, title to the property was never returned to the Spences, and it was never transferred to any charitable corporation.

In July 1988, the Spence's daughter told them that logging was being done on the ranch. The Spences were very distressed by this news because trees were a big asset to the beauty of the property as a retreat ranch. When asked to explain, Howell stated the logging was being done to cull beetle-infested trees. The loggers refuted this story and stated the logging was being done under a standard board foot contract. Shortly after the logging incident, the Spences learned through a friend that the property was being offered for sale in the real estate listings, although no signs were posted on the land.

On February 1, 1989, the Spences filed suit against Howell, Powell and Lausmann claiming breach of contract, fraud and racketeering. The case was submitted to the jury on the breach of contract and fraud theories and also on a cause of action for intentional infliction of emotional distress. The jury awarded the Spences $103,395 on the fraud and breach of contract claims [1], $200,000 for intentional infliction of emotional distress, and $300,000 in punitive damages.

Powell and Lausmann moved for a directed verdict on the basis that they were not individually liable and were liable only through the partnership, which motion was granted. Howell, Powell and Lausmann filed a motion for judgment notwithstanding the verdict (JNOV) on the intentional infliction of emotional distress award claiming it was unsupported by the evidence. They also moved for JNOV on the fraud and contract claims based upon the statute of limitations, and on the contract cause of action claiming the contract violated the statute of frauds. Finally, they moved for JNOV as to the punitive damages award claiming that evidence of net worth was not presented to the jury and that Idaho's procedure regarding punitive damages denied them due process. Howell, Powell and Lausmann also moved for a new trial on the basis of an improper jury instruction and misconduct on the part of the Spences' attorney.

The district court allowed the verdict to stand, except for the award for intentional infliction of emotional distress which was set

---

**1.** The jury actually awarded $103,395 in damages for fraud and $103,395 in damages for breach of contract. In entering judgment on the verdict, the district court entered just one amount of $103,395 in damages for both claims.

Neither party has challenged that procedure and we, therefore, accept that as the total award to which Spences are entitled on either or both claims.

aside. Howell, Powell and Lausmann then appealed the denial of their post-trial motions. The Spences cross-appealed the granting of the JNOV on the intentional infliction of emotional distress claim, the dismissal of Powell and Lausmann from personal liability, the dismissal of the racketeering claim, the refusal to admit certain evidence related to the hydroelectric project, and the denial of attorney fees. This case was originally assigned to the Court of Appeals which reversed and remanded stating that the jury instruction on a real estate agent's duty of care should not have been given and that it affected the entire jury award. This Court then granted the Spences' Petition for Review.

## II.

### STANDARD OF REVIEW

■ When this Court reviews a decision of the Court of Appeals, it ordinarily considers all the issues presented to the Court of Appeals. *Sato v. Schossberger,* 117 Idaho 771, 774–75, 792 P.2d 336, 339–40 (1990). "While we value the opinion of the Court of Appeals for the insight it gives us in addressing the issues presented on appeal, we do not focus on the opinion of the Court of Appeals, but rather on the decision of the district court." *Id.* at 775, 792 P.2d at 340.

## III.

### ISSUES PRESENTED ON APPEAL

The appellants Howell, Powell and Lausmann present the following issues for our determination on appeal:

(1) Whether the district court abused its discretion by denying the appellants' motion for a new trial or motion for JNOV on the fraud claim.

(2) Whether the district court erred in denying the appellants' motion for JNOV on the breach of contract claim.

(3) Whether the district court erred by denying the appellants' motion for JNOV on the punitive damages claim.

(4) Whether the district court erred by denying the appellants' motion for new

trial on the issue of misconduct on the part of the respondents' attorney.

The Spences present the following issues for our determination on their cross-appeal:

(1) Whether the district court erred by granting the defendants' motion for JNOV on the intentional infliction of emotional distress claim.

(2) Whether the district court properly dismissed the racketeering claim prior to trial.

(3) Whether the district court erred in granting the motion to dismiss Lausmann and Powell in their individual capacity.

(4) Whether the district court erred in refusing to admit evidence of projected revenues of the hydroelectric project planned for the ranch property.

(5) Whether the district court properly denied the Spences' attorney fees.

## IV.

### THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE APPELLANTS' MOTION FOR A NEW TRIAL ON THE FRAUD CLAIM

Appellants argue that a new trial must be granted because the district court improperly gave a jury instruction on a real estate agent's duty of care. They argue that instructing the jury on a realtor's duty would only be appropriate if negligence were being asserted against Howell as a real estate agent and they correctly point out that real estate malpractice was not pleaded in the complaint. The appellants' assertion is flawed because they erroneously characterize the instruction as dealing with real estate malpractice, when in fact the instruction was given in relation to the fraud claim. The issue of a realtor's duty relates to the fraud claim and whether there was some special duty owed by Howell to the Spences.

■ Since the trial court was instructing the jury on a potential special duty owed to the Spences based on Howell's status as a real estate agent, the central issue becomes whether the Spences introduced evidence of a fiduciary relationship at trial which would

support the giving of such an instruction. We have noted that it is the duty of the trial court to instruct the jury on all issues which are supported by the evidence, including any reasonable theory presented by the parties and finding support in the evidence. *Rosenberg v. Toetly*, 94 Idaho 413, 420, 489 P.2d 446, 453 (1971).

■ The trial transcript is replete with testimony from witnesses who attested to Howell's status as a realtor, and his representations about his ability to handle the real estate aspect of the partnership because of his real estate background. There is testimony from the Spences, Powell and Lausmann that Howell was allowed to perform duties such as drafting the earnest money agreement because he was a real estate agent. Mr. Spence testified that Howell was the realtor and for that reason both Spences relied on him to deal with the property.

The testimony at trial supports the Spences' argument that Howell advised them on how to best establish a Christian retreat. In the course of these discussions, Howell gave advice on how to handle the property upon which the retreat would be located. The Spences then relied on this advice and, in order to facilitate the building of the retreat, transferred title of the property to Howell, Powell and Lausmann. We find sufficient evidence in the record to support the Spences' allegation that Howell used his status as a realtor in order to effectuate the fraud. While admittedly the scope of the project changed from a subdivision development to a retreat funded by the sale of a hydroelectric project, the nature of Howell's activities remained constant: he was acting as and treated as a realtor.

Furthermore, on review we must look at the instructions given and ascertain whether the instructions, when considered as a whole, fairly and adequately present the issues and state the applicable law. *Manning v. Twin Falls Clinic & Hosp.*, 122 Idaho 47, 50, 830

P.2d 1185, 1188 (1992). Reversible error only occurs when an instruction misleads the jury or prejudices a party. *Id.* at 51, 830 P.2d at 1189. The jury instruction at issue here left the factual question of whether or not a realtor/client relationship existed up to the jury.[2] Moreover, it is difficult to say the parties did not clearly understand this was going to be an issue, since the trial judge instructed both parties to proceed with the trial with this theory in mind. We find no error in the instruction, or in the fact that the judge instructed on this particular issue.

## V.

## THE MOTION FOR JNOV ON THE FRAUD CLAIM WAS PROPERLY DENIED

■ After trial, appellants moved for JNOV on the fraud claim. A motion for JNOV "is treated as simply a delayed motion for a directed verdict and the standard for both is the same." *Quick v. Crane*, 111 Idaho 759, 763, 727 P.2d 1187, 1191 (1986). "In making the motion, the defendants necessarily admitted the truth of all of the plaintiffs' evidence and every legitimate inference that could be drawn therefrom in the light most favorable to the plaintiff." *Id.* "This Court must review the record of the trial court below, and draw all inferences from the evidence in a light most favorable to the non-moving party to determine if there was substantial evidence to justify submitting the case to the jury." *Id.* at 764, 727 P.2d at 1192.

### A. Statute of Limitations

■ The appellants argue that under Idaho law knowledge of the facts that would cause a reasonably prudent person to make inquiry is equivalent to knowledge of the fraud and triggers commencement of the statutory period. *Williams v. Shrope*, 30 Idaho 746, 168 P. 162 (1917). They claim the

---

2. The trial court gave the following jury instruction:

The plaintiffs also claim that Mr. Howell was their real estate agent and as such owed them a special duty of utmost good faith. Whether or not Mr. Howell was acting as their real estate agent at the time in question and thus whether or not a special duty was owed to the plaintiffs or whether or not the real estate agent/client relationship terminated by the time in question; if one ever existed, is for you alone to decide.

facts in this case should have put a reasonably prudent person on inquiry notice of the fraud at least as of 1980.

There is ample evidence through the testimony of the Spences, and their neighbors, from which the jury could find that the Spences did not discover the fraud until 1988. The trial judge noted that the evidence supported the Spences' claim that they were lulled into a false sense of security that the ranch would be developed. The transcript contains numerous representations by Howell to the Spences and their neighbors that a Christian retreat ranch was being built. The testimony at trial supports a jury finding that a reasonable person would not have been suspicious until 1988 when the Spences saw the logging on the property and were told by a realtor that the property was listed for sale.

The trial judge instructed the jury that a person has a duty to exercise reasonable diligence under the circumstances in discovering the commission of a fraud. Taking the evidence in a light most favorable to the non-moving party, there was substantial evidence to present the issue to the jury. The jury apparently determined that the fraud was not discoverable until 1988. Since this action was filed in 1989, it was filed timely.

### VI.

### THE MOTION FOR JNOV ON THE BREACH OF CONTRACT CLAIM WAS PROPERLY DENIED

#### A. There was a valid contract between the parties

■ The Spences contend that the March, 1980, letter from Howell to the Spences, together with the earnest money agreement, establish that there was a contract between the parties. We do not agree that the documents alone are sufficient to establish a contract to develop a religious retreat. However, there was considerable testimony at the trial which supports the existence of an oral contract for the purpose of developing the retreat ranch. A contract will be enforced if it is "complete, definite and certain in all its material terms, or contain[s] provisions which are capable in themselves of being

reduced to certainty." *Giacobbi Square v. PEK Corp.*, 105 Idaho 346, 348, 670 P.2d 51, 53 (1983). Additionally, the question as to the existence of an oral contract is one of fact. *Stout v. Boise Cascade Corp.*, 87 Idaho 38, 42, 390 P.2d 63, 65 (1964). Therefore, if there is substantial, competent evidence to support the finding of an oral contract, the finding will not be disturbed on appeal. *Id.*

■ The Spences testified that Howell, Powell, Lausmann and Charles Spence were to be on the board of directors for the retreat. The testimony of Lausmann substantiates the Spences' testimony that Howell was to be the businessman in charge of the financial aspects of the retreat. There was no discussion of splitting profits, but this may be attributed to Mr. Spence's testimony that this was to be a nonprofit venture. The Spences' son testified that the physical work was to be done by the Spence family, and numerous exhibits were introduced in support of this assertion. After reviewing the transcript from the trial, we find that there was substantial evidence that the documents, together with the testimony at trial, establish that there was indeed an oral contract to develop the property into a religious retreat.

#### B. Statute of Limitations

Appellants contend that the statute of limitations for the breach of contract claim began to run in 1981. Under I.C. § 5–217, claims based upon oral contracts must be brought within four years, and therefore the Spences' claim, which was filed in 1989, would not be timely.

■ The statute of limitations does not begin to run until a claim accrues upon the breach of the contract. *Prewett v. First Nat'l Bank of Hagerman*, 45 Idaho 451, 457, 262 P. 1057, 1058 (1928). The question of when the breach occurred is a factual one. Therefore, we look to the record to see if there is sufficient and competent evidence to support the findings. *Mays v. Kast*, 96 Idaho 472, 531 P.2d 234 (1975). The evidence of the discovery of the logging and the listing of the property for sale is certainly a point at which the Spences were aware their development was not going forward. Taking the

evidence outlined above in a light most favorable to the non-moving party, there was substantial evidence to present the issue to the jury and from which the jury could find that the Spences' agreement with Howell was not breached until 1988.

## C. Statute of Frauds

■  Appellants argue that if there is any oral contract, it is void under the statute of frauds as a matter of law. They claim this could only be an oral contract for the sale of land, and that the contract is incapable of being performed within one year. I.C. §§ 9–503,–505.[3]  Previously in this opinion we found that an oral contract existed, however, we find no violation of the statute of frauds. The oral contract involved in this case simply does not fall within the purview of the statute of frauds. It was not an oral contract for the sale of land and it was not incapable of being performed within one year. The oral contract was for the formation of a partnership for the purpose of developing a Christian retreat ranch. Incidental to this oral contract was the transaction involving the land, but the initial agreement did not depend on the transfer of the land, except for the alleged tax purposes. The land had already been purchased and designated for the retreat, prior to the oral contract.

Previously we held that the district court did not err in instructing the jury on the duty of a real estate agent as it related to the fraud claim. This is simply a reflection of Howell's activities and representations to the Spences of his special knowledge in developing land. It does not automatically follow that any agreements between the parties must necessarily involve the transfer of real property. The oral contract clearly was for the development of the retreat, and not for the sale of land.

Further, the oral contract at issue was clearly capable of performance within one year. In *Whitlock v. Haney Seed Co.*, 110 Idaho 347, 348, 715 P.2d 1017, 1018 (Ct.App. 1986), the Court of Appeals noted that this Court has narrowly construed this provision of the statute of frauds. The statute does not govern an oral contract that "might have been fully performed and terminated, within a year …" citing *Darknell v. Coeur D'Alene & St. Joe Transp. Co.*, 18 Idaho 61, 69, 108 P. 536, 539 (1910). At the time this oral contract was entered into, several avenues were being explored to raise money for the project. They were beginning the initial steps to subdivide the land, they were exploring the hydroelectric potential, and Howell represented in a letter to the Spences that the Powell and Lausmann were joining the partnership in order to support it financially. All of these sources, with perhaps the exception of the hydroelectric source, were certainly capable of producing the funds necessary to develop the ranch within the first year. The land had already been acquired and the Spences had already held religious gatherings on the ranch. All that was lacking at the time the oral contract was entered into was financial resources. Given the resources available, the contract was clearly capable of performance within one year.

The fact that the Spences were unaware at the time the oral contact was made that appellants had no intention of contributing to the ranch, has no bearing on the analysis. Looking at the evidence at the time the oral contract was made, the contract was performable within one year. Accordingly, we

---

3.  I.C. § 9–503 states:
   **Transfers of real property must be in writing.**—No estate or interest in real property, other than for leases for a term not exceeding one (1) year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

   I.C. § 9–505 states:
   **Certain agreements to be in writing.**—In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:
   1.  An agreement that by its terms is not to be performed within a year from the making thereof. . . .

uphold the district court's finding that there was no violation of the statute of frauds.

## VII.

### THE MOTION FOR JNOV OF THE PUNITIVE DAMAGES AWARD WAS PROPERLY DENIED

■ We have stated that the standard of review for punitive damages is to determine if the trial court abused its discretion in allowing the jury to consider punitive damages. *Garnett v. Transamerica Ins. Servs.*, 118 Idaho 769, 781, 800 P.2d 656, 668 (1990). We look to see if sufficient evidence was placed before the jury to raise the questions of the defendants' malice and whether an award of punitive damages would serve as a deterrent to similar future conduct. *Id.*

■ The appellants argue that the jury had no evidence upon which to determine the amount of punitive damages necessary to punish and deter them. They argue that since there was no evidence as to their respective net worth, there was no way to judge the effect of an award of punitive damages on them. It is apparent from the record that at least some minimal evidence was presented as to net worth. Evidence of Howell's financial condition was presented, along with evidence of the amount of money Howell, Powell and Lausmann made on the sale of the hydroelectric project. This evidence of net worth was presented at trial and negates the appellants' argument that there was nothing on which the jury could base an award. While this is admittedly a slim amount of evidence, we believe the district court did not abuse its discretion in finding there was at least a sufficient amount to place this issue before the jury.

■ Appellants next argue that the jury instruction given on punitive damages did not give proper guidance to the jury in establishing an appropriate punitive damage award since it did not contain any reference to appellants' wealth. The trial court gave the jury the first part of IDJI 921, but did not give the jury the second part of IDJI 921.[4] Appellants contend that this type of unfettered discretion on the part of the jury was cautioned against in *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). We do not agree that an instruction on net worth must be given by the trial court to avoid a charge of unfettered discretion which was cautioned against in *Haslip*. In *Haslip*, as in this case, the jury instruction approved of did not take into consideration a defendant's wealth.

After assessing the jury award in this case, we find that the punitive damage award could easily have been based upon the jury's desire to take away the profit the defendants made on the hydroelectric project. The testimony at trial established that the defendants made over $400,000 on the sale of the hydroelectric business. The punitive damages awarded were only $300,000. This clearly satisfies *Haslip* in that it takes away the profit made by the defendants for their wrongful conduct. *Id.* at 22, 111 S.Ct. at 1045. It also satisfies this Court's requirement that there be sufficient evidence placed before the jury to raise the questions of the defendants' malice and whether an award of punitive damages would serve as a deterrent to similar future conduct. *Garnett v. Transamerica Ins. Servs.*, 118 Idaho 769, 781, 800 P.2d 656, 668 (1990).

Next, appellants assert *Garnett* must be re-examined in light of the new due process requirements established in *Haslip*. The ar-

---

4. The trial court gave the following instruction, which is taken directly from IDJI 921–1:

If you find that the defendants' acts which proximately caused injury to the plaintiffs were in extreme deviation from reasonable standards of conduct and that these acts were performed by the defendants with malice, fraud, oppression, wantonness, or gross negligence, you may in addition to any compensatory damages to which you find the plaintiffs entitled award to plaintiffs an amount which will punish the defendants and deter the defen-

dants and others from engaging in similar conduct in the future.

The second portion of IDJI 921–1 states:

You have been permitted to hear evidence pertaining to defendant[s'] wealth and financial condition. This evidence was admitted for your consideration only with reference to the question of exemplary or punitive damages in light of all other evidence before you if you determine that such an award should be made in this case.

gument is that under Idaho's present case law, no procedure exists whereby this Court can examine or review the jury's arbitrary and excessive award. We believe that our decision in *Garnett* adequately meets the standards subsequently established in *Haslip*. The procedural safeguards we outlined in *Garnett*, which give the trial court the discretion to grant a JNOV or new trial if the award is excessive, meet the concerns the Supreme Court listed in *Haslip*. As noted above, although the jury instruction given by the trial court did not include the entire IDJI language, the instruction approved of in *Haslip* did not include this language either.

We find that sufficient evidence was placed before the jury to raise the questions of the defendants' malice and whether an award of punitive damages would serve as a deterrent to similar future conduct. We also find that Idaho's post trial review of punitive damages awards provides adequate procedural safeguards. Accordingly, we hold that the trial court did not abuse its discretion in allowing the jury to consider punitive damages.

## VIII.

### THERE WAS NO ATTORNEY MISCONDUCT

Prior to trial, Howell filed a motion in limine seeking to exclude evidence that he had been sued for fraud in connection with a real estate transaction on a prior occasion. The district court ruled the evidence was not admissible because it was evidence of past bad acts and was excluded under I.R.E. 404. At trial, the Spences' attorney elicited testimony from Howell concerning the evidence which was the subject of the motion in limine. Appellants argue this was a violation of that order in limine and misconduct by the attorney, which requires a new trial.

■ We have stated when we review a district court's ruling on a motion for new trial, we acknowledge that the trial court possesses discretion to grant or refuse to grant a new trial, and such discretion will not be disturbed on appeal unless it clearly appears to have been applied unwisely, and to have been manifestly abused. *Hoglan v. First Sec. Bank of Idaho, N.A.*, 120 Idaho

682, 684, 819 P.2d 100, 102 (1991) (quoting *Chenery v. Agri–Lines Corp.*, 115 Idaho 281, 286, 766 P.2d 751, 756 (1988)).

■ Given the sequence of the testimony from Howell, we do not agree that there was any attorney misconduct. Howell opened up the area by testifying about acquiring an easement from the Dobroths, which was the subject of the prior suit for fraud, and which was the subject of the motion in limine. He testified that he had obtained the easement and then had given it back to the Dobroths. When asked why he gave back the easement, Howell brought up the suit against him. Howell's attorney initially objected to the question on the basis of relevance, but was overruled. Thereafter Howell volunteered the information about the lawsuit against him. It was only after several more questions and responses regarding the lawsuit that Howell's attorney then sought to exclude the testimony based upon the order in limine. Appellants claim this line of questioning was in blatant disregard of the motion in limine. They claim they were severally prejudiced by this testimony, and a new trial should have been granted. We do not agree that the Spences' attorney disregarded the motion in limine. The Spences' attorney did not question the witness about the lawsuit until Howell brought up the topic himself. In light of Howell's own testimony, we find no abuse of discretion by the district court in denying the motion for new trial.

## IX.

### THE MOTION FOR JNOV ON THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AWARD WAS IMPROPERLY GRANTED

The Spences' argument is that five months after a highly emotional trial, the trial judge should not have granted the motion for JNOV on the intentional infliction of emotional distress claim because he lacked the perspective he had immediately following the trial. The Spences contend that the trial judge granted the JNOV because time had lessened the impact of the Spences' emotional testimony at trial.

At the time the district court was considering the motion for JNOV, we had not yet issued our opinion in *Curtis v. Firth*, 123 Idaho 598, 850 P.2d 749 (1993). The Spences now contend their case fits squarely within the elements of intentional infliction of emotional distress articulated in *Curtis*. A plaintiff must prove that: 1) the conduct was intentional or reckless; 2) the conduct was extreme and outrageous; 3) there was a causal connection between the wrongful conduct and the emotional distress; and 4) the emotional distress was severe. *Id.* at 601, 850 P.2d at 752 (quoting *Evans v. Twin Falls County*, 118 Idaho 210, 796 P.2d 87 (1990)). In *Curtis*, this Court looked at the conduct of Curtis and the testimony given at trial, and determined that the jury chose not to believe Curtis. *Id.* at 606, 850 P.2d at 758. Reviewing the district court decision under the standard set forth in *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986), the Court ruled that it would not disturb the jury verdict. *Id.*

This Court stated in *Curtis* that:

> On a motion for a new trial, the court has broad discretion. On a motion for directed verdict or judgment n.o.v., it has no discretion and must consider only the question of law whether there is sufficient evidence to raise a jury issue.

*Id.* at 607, 850 P.2d at 758 (quoting *Quick* at 766–67, 727 P.2d at 1194–95).

After reviewing the transcript of the trial below, we find that there was sufficient evidence to support presenting the question to the jury and from which the jury could conclude that the members of the partnership had intentionally acted in an extreme and outrageous manner toward the Spences, causing the Spences severe emotional distress. Barbara Spence testified that the ranch retreat was the family's life long dream. Mr. Spence also testified tearfully that he had given the appellants his trust, faith and family's future. Several of the Spences' children testified that the decisions the family had made in their lives had been made with the vision of the ranch in mind. The Spences' neighbors and friends testified that the Spences were trusting and honest and that they had devoted their lives to developing this retreat.

There are numerous instances in the record from which the jury could have found the Spences were in severe emotional distress. The Christian retreat was the entire family's dream for many years, and several family members made major life decisions based upon its development. Additionally, the testimony as to the feelings the various family members had when they discovered the logging on the land was very emotional. The trees were a major asset of the retreat and the logging of the land had a severe effect on the family. We believe that the jury could find from the testimony that the shock of losing 550 acres of land upon which a family based a life's plan, meets the test we set forth in *Curtis*.

On a motion for JNOV the trial judge must consider only the question of whether there is sufficient evidence to raise a jury question. We find that there was sufficient evidence presented to the jury on the issue of intentional infliction of emotional distress, and we therefore reinstate the jury award.

## X.

## THE DISTRICT COURT PROPERLY DISMISSED THE RACKETEERING CLAIM

The Spences argue that they sufficiently pleaded a claim for state and federal racketeering in their complaint, and therefore it was error for the district court to dismiss the claim. The Spences did not plead a federal violation of the racketeering statutes in their complaint, or at any time below, and we therefore do not consider that aspect of their claim on review.

This Court has not addressed the sufficiency of a pleading of a state racketeering violation, however the Court of Appeals has noted that I.C. § 18–7803(d) requires the plaintiff to come forward with evidence, or plead facts, that demonstrate the requisite "pattern of racketeering activity." *Eliopulos v. Knox*, 123 Idaho 400, 408, 848 P.2d 984, 992 (1992). The Spences' case is similar to *Eliopulos*. The Spences' amended complaint only alleges one general scheme of racketeering, the pur-

pose of which was to defraud the Spences out of their ranch. The district court noted that although a single scheme may be sufficient to establish a pattern of activity, the plaintiff must show that the predicate acts themselves amount to, or constitute a threat of, *continuing* racketeering activity. *Id.*[5]

The amended complaint did not allege a pattern of racketeering which would meet the requirements of I.C. § 18–7803(d). Further, the record demonstrates that the Spences did not really allege even one incident of racketeering, and they certainly did not allege two. The primary evidence that the Spences proposed in support of their racketeering allegation was a copy of a verified complaint from a lawsuit for fraud against a corporation owned by the appellants. The verified complaint pertains to the same easement previously discussed in Section IV that Howell allegedly obtained fraudulently from the Spences' neighbors. Even assuming the court should have allowed this testimony and evidence, it still pertains to the same single activity of defrauding the Spences and developing the land for hydroelectric purposes, and therefore is not evidence of two or more incidents of racketeering activity. We find no error in the district court's dismissal of the racketeering count in the amended complaint.

## XI.

## THERE WAS NO ERROR IN DISMISSING POWELL AND LAUSMANN IN THEIR INDIVIDUAL CAPACITIES

■ The Spences have appealed the district court's decision granting Powell and Lausmann's motion for directed verdict dismissing them in their individual capacity from this case. This issue really has no bearing on the outcome of this appeal. Powell and Lausmann have conceded in their brief before this Court that they are liable through the partnership, both from the partnership assets and the partners' individual assets, for the wrongful acts of Howell done

in the ordinary course of the partnership business. *See* I.C. §§ 53–313 to –315. Because none of the issues involved in this appeal require a finding as to Powell and Lausmann's individual liability, except through the partnership, we find no error on the part of the district court in granting the directed verdict.

## XII.

## ADMISSION OF THE PROJECTED HYDROELECTRIC PROJECT REVENUES WAS PROPERLY DENIED

■ The Spences offered an exhibit which would have provided the jury with an estimate of the potential value of the hydroelectric rights. The trial court rejected the exhibit on the ground that it had not been available to appellants prior to the sale of the hydroelectric project. The Spences claim this was error because the document was being offered to prove the value of the hydro development opportunity and not the appellants' knowledge of this potential. There was no allegation, however, that the partnership sold the project for less than it was worth so that evidence of its true value would be relevant. The only allegation was that the partnership sold the project and received a substantial amount of money which it would not have obtained but for the fraud on the Spences. We find no error in the trial court's exclusion of the evidence.

## XIII.

## ATTORNEY FEES

■ The Spences argue they are entitled to attorney fees under I.C. § 12–120(3) because this is a case involving a contract and a commercial transaction. That section allows for attorney fees "[i]n any civil action to recover on ... [a] contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction...." This case very clearly does not involve a contract for the sale of goods or services and thus that part of the statute is

---

5. The Idaho Code provides:
"Pattern of racketeering activity" means engaging in at least two (2) incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated incidents ...
I.C. § 18–7803(d).

inapplicable. As to the provision allowing attorney fees in a commercial transaction, the statute defines a commercial transaction as all transactions except transactions for personal and household purposes. We have said that the test is whether the commercial transaction comprises the gravamen of the lawsuit, that is, whether the commercial transaction is integral to the claim and constitutes the basis upon which the party is attempting to recover. *Brower v. E.I. Du-Pont De Nemours & Co.*, 117 Idaho 780, 792 P.2d 345 (1990). The district court found that the gravamen of this case was fraud, that the commercial contract claim was incidental to the fraud claim, and therefore the Spences were not entitled to attorney fees. We agree the primary focus of Spences' action was on the fraudulent conduct of Howell and his partners in obtaining title to the real property from them. It was only incidental to their case that Howell also breached an agreement to go into partnership with Spences for the development. The real loss was the loss of the property not the loss of the partnership. In fact the Spences candidly admit in their brief on appeal that "plaintiffs took the trouble of establishing a breach of contract in order to qualify for an award of attorneys' fees." This cause of action was not the gravamen of their case and the district court did not err in refusing to award fees in what was primarily a fraud case.

## XIV.

## CONCLUSION

The decision of the district court denying the appellants' motion for judgment n.o.v. is affirmed. We also affirm the denial of the motion for a new trial. We reverse the district court's judgment n.o.v. as to the claim for intentional infliction of emotional distress and reinstate the jury award. The request for attorney fees is denied. Costs to respondents on appeal.

McDEVITT, C.J., and JOHNSON and SILAK, JJ. and KOSONEN, J. (Pro Tem.) concur.