917 P.2d 737

Donald BOTT, John Anton Berg, and James E. Hoar, Individually and as Joint Venturers, Plaintiffs–Respondents–Cross Appellants,

v.

IDAHO STATE BUILDING AUTHORITY, an Independent Public Body Corporate, Defendant–Appellant–Cross Respondent.

No. 21344.
1996 Opinion No. 49.

Supreme Court of Idaho,
Boise, December 1995 Term.

May 17, 1996.

Hawley, Troxell, Ennis & Hawley, Boise, for appellant.  Albert P. Barker argued.

Nyman & Thomas, Boise, and Hall, Farley, Oberrecht & Blanton, Boise, for respondent. Kenneth D. Nyman and Raymond D. Powers argued.

McDEVITT, Chief Justice.

This case involves a breach of contract action.  The Idaho State Building Authority (the ISBA) contracted with architects, Donald Bott, John Anton Berg, and James E. Hoar (collectively referred to as Bott), to design and administrate the construction of a project to expand and modernize the Idaho State School for the Deaf and the Blind. Prior to the completion of the project Bott was terminated from the project.  The present case is the ISBA's appeal from the district court's order denying portions of the ISBA's motion for a judgment n.o.v., denying the ISBA's motion for a new trial, and

awarding Bott interest, attorney fees, and costs. Bott cross-appeals from the district court's order granting judgment n.o.v. on Bott's claims for an incentive bonus and for interior design services provided by Bott.

## I.

## BACKGROUND AND FACTS

This matter originated in 1987 and has been the subject of a prior appeal before this Court in *Bott v. Idaho State Bldg. Auth.*, 122 Idaho 471, 835 P.2d 1282 (1992) (*Bott I*). The relevant facts in this case are as follows.

In January 1985, the ISBA and Bott entered into a contract, which provided that Bott would provide architectural and other services for a project to expand, renovate, and remodel facilities at the Idaho State School for the Deaf and Blind in Gooding, Idaho. Under the Architect Agreement (the Agreement) entered into by the parties, the ISBA was to pay Bott 7.75% of the total construction cost, plus, if the total construction cost was less than $8,200,000.00, ISBA was to reward Bott with an incentive bonus of 10% of the amount by which the total construction cost was less than $8,200,000.00. The Agreement provided that any "additional services" requested by the ISBA would be compensated at an hourly rate, not to exceed amounts specified in the Agreement. The services provided by Bott were to be divided into four phases: the schematic design phase, the design development phase, the final documents and bidding phase, and the construction phase. Bott completed the schematic design phase, the design phase, and provided construction documents on the living units and the educational facilities to go out to bid.[1] In July 1986, prior to the completion of the construction phase, Bott was terminated from the project.

Bott subsequently filed suit seeking compensation for the work it had completed on the project. At trial Bott argued that it had performed the architectural services required under the Agreement, but that Bott encountered repeated delays on the project due to the ISBA's frequent changes and readjustments to the designs proposed by Bott. The ISBA disagreed with Bott's contentions and argued that Bott was difficult to work with and that it caused its own problems because it did not follow the structured chain of command for getting designs approved. Bott sought damages totalling $212,447.00. This total consisted of the following claims:

| | |
|---|---|
| Basic fees under the contract | $ 44,252.00 |
| Incentive bonus | 38,314.00 |
| Programming fees | 10,905.00 |
| Additional Services | 118,976.00 |
| | |
| TOTAL | $212,447.00 |

Bott's claim for the $118,976.00 in additional services, as presented at trial, consisted of the following amounts:

| | |
|---|---|
| Landscaping | $ 6,675.00 |
| Educational Facilities | 15,034.00 |
| Interior Design | 3,600.00 |
| Roof Redesign | 4,290.00 |
| Second Schematic Design[2] | 89,377.00 |
| | |
| TOTAL | $118,976.00 |

The jury returned a special verdict finding that Bott had substantially performed the contract until its termination and that the ISBA had breached the contract. The jury awarded Bott general damages of $201,542.00, less an offset of $2,250.00, for a total verdict of $199,292.00. There was no delineation of the amount of damages awarded by the jury with respect to each of Bott's claims. The district court entered judgment on the jury's verdict on September 12, 1989.

On September 20, 1989, Bott filed a motion seeking costs, pre-judgment interest, and attorney fees for both of Bott's attorneys, Mr. Kenneth Nyman and Mr. Raymond Powers. The ISBA subsequently filed post-judgment motions seeking a judgment n.o.v. under I.R.C.P. 50(b), a new trial under I.R.C.P. 59(a)(5), (a)(6), and (a)(7), a remittitur or

---

1. On September 5, 1985, the project was split into two distinct stages: Phase I, which involved work on the living units at the school, and Phase II, which involved work on the educational facilities.

2. Bott claims that it is entitled to compensation for work performed on a "second" schematic design, since Bott was required to revise the schematic designs a number of times, such that all of the work performed constituted a "second" schematic design.

additur, and a judgment vacating the district court's prior judgment.

The district court denied the ISBA's motion for judgment n.o.v. on the issue of breach of contract, but granted a new trial on the sole issue of damages. The district court held that the errors in the jury's determination of damages were substantial enough to support a conclusion that the jury acted under the influence of prejudice. The district court further concluded that it could not, based upon the record before it, make a determination of the damages in the case for the purposes of ordering a remittitur. The court held that the jury was properly instructed on the issues and that the requested instructions presented a correct statement of the law. The court declined to rule on the issue of attorney fees, costs, and pre-judgment interest, pending the outcome of the new trial. On January 22, 1990, the district court entered an order vacating the September 12, 1989 judgment, to the extent that it awarded damages and granted a new trial solely on the damages issue.

On appeal to the Supreme Court, the case was remanded to the district court for reconsideration of the ISBA's motion for judgment n.o.v. on the issue of damages and for clarification of the basis for the new trial order. *Bott I*, 122 Idaho at 481, 835 P.2d at 1292. The Court also held that the jury instructions given to the jury, accurately presented the issues and stated the applicable law. *Id.* at 476, 835 P.2d at 1287. Any errors in the jury instructions were held not to be prejudicial. *Id.* On the issue of attorney fees, the Court held that section 12–117 of the Idaho Code was inapplicable for the reason that the ISBA was not an "agency" within the meaning of the statute, but held that an award of attorney fees to the prevailing party below was appropriate under Idaho Code § 12–120(3). *Id.* at 479–81, 835 P.2d at 1290–92. Attorney fees on appeal were not awarded since neither party prevailed on appeal. *Id.* at 481, 835 P.2d at 1292.

On remand, the ISBA argued that judgment n.o.v. should be granted with respect to Bott's claims for the incentive bonus, the second schematic design, the landscaping work, and the interior design work. The ISBA further asserted that the ISBA is entitled to a new trial on the issues of both liability and damages.

In ruling on the issues presented, the district court divided the jury's general damage verdict of $199,292.00 into specific amounts allocated to each of Bott's claims for damages. These amounts were based on Bott's claims for damages presented at trial, less the $10,905.00 claim for programming services, which the jury appeared to have denied. Thus, the general damage verdict was broken down by the trial court as follows:

**Basic Design Fee**

| | |
|---|---|
| Unpaid 7.75% fee | $ 44,252.00 |
| Incentive bonus | $ 38,314.00 |
| **TOTAL BASIC DESIGN FEE** | **$ 82,566.00** |

**Additional Services**

| | |
|---|---|
| Landscaping Work | $ 6,675.00 |
| Educational Facilities | $ 15,034.00 |
| Interior Design Work | $ 3,600.00 |
| Roof Redesign Work | $ 4,290.00 |
| Second Schematic Design | $ 89,377.00 |
| **TOTAL ADDITIONAL SERVICES** | **$118,976.00** |

| | |
|---|---|
| TOTAL DAMAGES | $201,542.00 |
| LESS OFFSET | $ 2,250.00 |
| **NET VERDICT** | **$199,292.00** |

This breakdown by the trial court was premised upon specific exhibits admitted into evidence at the trial, which clearly and unequivocally set forth each claimed item of damage and the amount thereof. The jury's general verdict mirrored these trial exhibits. Neither party argues that this breakdown of the general verdict by the trial court was inaccurate.

The district court reversed its prior decision and granted judgment n.o.v. with respect to Bott's claims for the incentive bonus ($38,314.00) and the interior design work ($3,600.00), and denied judgment n.o.v. with respect to Bott's claims for compensation for the landscaping work ($6,675.00) and the second schematic design ($87,377.00). As a result of its conclusion, the district court reduced the $199,292.00 jury verdict by the amount of the claim for the incentive bonus and the interior design services, and determined that the damages totalled $157,378.00.[3] The jury's verdict was upheld, as reduced by the district court.

The district court further concluded that there was no basis for granting a new trial under I.R.C.P. 59(a)(5), (a)(6) or (a)(7). The district court held that there was no basis for granting a new trial pursuant to I.R.C.P. 59(a)(6) on the issues of Bott's substantial performance of the contract, the ISBA's breach, and the ISBA's claim for a set-off. With respect to the issue of whether a new trial was proper on the issue of damages, the district court relied upon the reduced sum of damages of $157,378.00, rather than the $199,292.00 sum as awarded by the jury. The district court concluded that there was no basis for granting a new trial pursuant to I.R.C.P. 59(a)(6), since the reduced damages of $157,378.00 was not contrary or against the clear weight of the evidence.

The district court next concluded that based upon the reduced damage award, the evidence supported Bott's method of calculating the costs for the additional schematic design work. In holding that Bott's method of calculating costs for the additional schematic design work was reasonable, the dis-

trict court concluded that, even if the damage award was more than what it would have awarded, the disparity was not so great that the difference could not be explained away as two separate entities merely valuing the proof of the damages in two equally fair ways. The district court found no influence of passion or prejudice against ISBA in the reduced verdict and concluded that there was no basis for granting a new trial pursuant to I.R.C.P. 59(a)(5).

On ISBA's motion for a new trial pursuant to I.R.C.P. 59(a)(7), the district court held that there was no error in the court's refusal to give the ISBA's requested jury instructions. Thus, the district court concluded that there was no basis for granting a new trial under I.R.C.P. 59(a)(7).

Bott filed a renewed motion for attorney fees, costs, and pre-judgment interest on April 26, 1994. On October 14, 1994, the district court awarded post-judgment interest upon those amounts which had been reaffirmed from the court's earlier ruling and awarded pre-judgment interest upon the schematic design claim, the landscaping claim, the splitting of the educational facilities claims and the roof redesign claims, until the time of trial. The district court held that on the schematic design claim, which the district court concluded was meritorious under the theory of *quantum meruit*, became liquidated after the verdict on the claim was reached. Thus, the court awarded pre-judgment interest on the schematic design claim from the time of the verdict, until the entry of the final judgment. The district court further held the ISBA was not immune from pre-judgment interest under the doctrine of sovereign immunity. Attorney fees were awarded to Bott under I.C. § 12–120(3).

The ISBA appealed the decision of the district court, and Bott cross-appealed.

## II.

### ISSUES PRESENTED ON APPEAL

The ISBA presents the following issues on appeal:

---

**3.** The district court in reducing the amount of the verdict did not specifically order a remittitur under I.R.C.P. 59.1, which would have allowed the ISBA to elect or reject a conditional grant of a new trial.

(1) Whether the district court erred in denying the ISBA's motion for judgment n.o.v. as to Bott's claimed schematic redesign work.

(2) Whether the district court erred denying the ISBA's motion for a new trial as to Bott's damage claims.

(3) Whether the ISBA is immune from pre-judgment interest under the doctrine of sovereign immunity.

(4) Whether the district court erred in awarding pre-judgment and post-judgment interest to Bott.

(5) Whether the district court erred in awarding attorney fees to Bott.

(6) Whether the ISBA or Bott is entitled to attorney fees on appeal.

Bott, in its cross-appeal, presents the following issues:

(1) Whether there is substantial evidence to support the total damage award.

(2) Whether the district court erred in denying judgment n.o.v. as to the incentive bonus.

(3) Whether the district court erred in denying judgment n.o.v. as to the interior design work performed by Bott.

## III.

### MOTION FOR JUDGMENT N.O.V.

■ In reviewing the trial court's grant or denial of a judgment n.o.v., this Court applies the same standard as does the trial court when originally ruling on the motion. *Bott I,* 122 Idaho at 474, 835 P.2d at 1285 (1992); *Quick v. Crane,* 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986). This Court is to review the record and draw all inferences from the evidence in a light most favorable to the non-moving party and determine whether substantial evidence exists to justify submitting the case to the jury. *Spence v. Howell,* 126 Idaho 763, 769, 890 P.2d 714, 720 (1995); *O'Dell v. Basabe,* 119 Idaho 796, 810, 810 P.2d 1082, 1096 (1991). The determination of whether the evidence before the Court is sufficient to create an issue of fact is a question of law. *Hudson v. Cobbs,* 118 Idaho 474, 478, 797 P.2d 1322, 1326 (1990); *Quick,* 111 Idaho at 763, 727 P.2d at 1187. For evidence to be considered substantial, requires the evidence to "be of such sufficient quantity and probative value that reasonable minds *could* conclude that the verdict of the jury was proper." *Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 736, 518 P.2d 1194, 1198 (1974); *see Watson v. Navistar Int'l Transp. Corp.,* 121 Idaho 643, 658, 827 P.2d 656, 671 (1992). "The question is not whether there is literally no evidence supporting the party against whom the motion is made, but whether there is substantial evidence upon which the jury could properly find a verdict for that party." *Pocatello Auto Color, Inc. v. Akzo Coatings Inc.,* 127 Idaho 41, 45, 896 P.2d 949, 953 (1995) (quoting *Quick,* 111 Idaho at 763–64, 727 P.2d at 1191–92). If, after reviewing the evidence in the manner set forth above, the Court finds that there is substantial evidence to show that reasonable minds could have reached the same conclusion as did the jury, then the jury's verdict will be upheld. *O'Dell,* 119 Idaho at 810, 810 P.2d at 1096; *Hudson,* 118 Idaho at 478, 797 P.2d at 1326.

■ Upon a motion for judgment n.o.v., the moving party admits the truth of the adverse evidence and every inference that may be legitimately drawn therefrom. *Pocatello Auto Color,* 127 Idaho at 44–45, 896 P.2d at 952–953; *Quick,* 111 Idaho at 763, 727 P.2d at 1191. Thus, in ruling on the motion and determining the sufficiency of the evidence, the Court does not examine any conflicting evidence presented by the moving party to refute the non-moving party's claims. *Brand S Corp. v. King,* 102 Idaho 731, 733, 639 P.2d 429, 431 (1981).

### A. The ISBA's Motion For Judgment N.O.V. On Bott's Claim For Compensation For The Schematic Redesign Work Was Improperly Denied.

The ISBA argues that the district court erred in denying the ISBA's motion for judgment n.o.v. on Bott's claim for schematic redesign work. The ISBA asserts that the schematic redesign work was required under the basic contract and as such should be compensated under the basic fee provisions of the Agreement. In the alternative, the ISBA argues that Bott's claim is for "additional services," and should be compensated

on an hourly basis, as provided in the Agreement.

▮ The Agreement provides for compensation for "all basic services" described in the Agreement in an amount equal to 7.75% of the total construction cost, plus a 10% incentive bonus if the total cost of construction is less that $8.2 million. Bott's responsibilities, as described in the Agreement, include "all architectural and structural, mechanical and electrical engineering services for the design of all facilities, improvements ..., and systems for the Project." Under the provisions which establish Bott's responsibilities under the schematic design phase of the project, Bott is required to "perform *all* professional services for the preparation of a schematic design of the Project in conformance with the program and the requirements of the Authority and State of Idaho." (emphasis added) The Agreement also provides that additional services requested by the ISBA would be compensated on an hourly basis.

We conclude that the Agreement unambiguously provides for a set rate of compensation for all work performed by Bott, including change orders on the schematic designs. The evidence reveals that Bott was required to perform a number of revisions on the schematic designs, some of which required a substantial amount of reworking and revisions on the designs. The determination of whether the revisions to the schematic designs constituted basic services or additional services under the Agreement is a question of fact for the jury. To the extent that the schematic redesign work was within the "all basic services" provision of the Agreement, Bott received compensation for the services as part of the $44,252.00 awarded for basic fees. To the extent that the schematic redesign work constituted "additional services" requested by the ISBA, Bott was entitled to compensation on an hourly basis. Since, Bott did not present any documentation of hourly work performed on the schematic redesign work, the record does not contain substantial evidence to support the jury's verdict of Bott's entitlement to compensation for the schematic redesign work. *Quick*, 111 Idaho at 763, 727 P.2d at 1191. We conclude that judgment n.o.v. is proper on the issue of

Bott's claim for schematic redesign work and reverse the decision of the district court.

▮ We reject Bott's argument that it is entitled to compensation for schematic redesign work under the doctrine of *quantum meruit*. There is no basis for the application of *quantum meruit* in this case; the Agreement contemplates a method of compensating Bott for the schematic redesign work performed, the theory was not argued at trial, and no instruction was given to the jury on *quantum meruit*. We also reject Bott's assertion that the entire jury verdict is supported by substantial evidence.

**B. The ISBA's Motion For Judgment N.O.V. On Bott's Claim For Compensation For The Incentive Bonus Was Properly Granted.**

Bott, in the cross-appeal, argues that judgment n.o.v. was improperly granted on Bott's claim for the incentive bonus fee. Bott contends that substantial evidence supports the jury's verdict.

▮ The Agreement between the parties provides that Bott would be compensated in an amount equal to 7.75% of the total construction cost. The Agreement also provides for the payment of a bonus as an incentive to keep the total cost of construction down. The incentive bonus provision provides that Bott would be compensated in an amount equal to 10% of the amount by which the total construction cost is less than $8,200,000.00. The construction cost upon which the basic fee and the incentive bonus is to be calculated is defined by the Agreement as "the total amount paid by [the ISBA] to the construction contractor performing the construction work." With respect to the payment of the basic services fee, the Agreement also provides that Bott is to receive monthly payments for work performed prior to the completion of the project, based upon a percentage of the total construction fee calculated by using an estimated cost of construction.

Bott was terminated prior to the completion of the project, however, there is no dispute between the parties that the actual total construction cost to complete the pro-

ject was $8,207,898.31. Bott argues that since the estimated "bid" construction cost of $7,688,311.54 was used to calculate the amount of monthly compensation Bott was to receive for basic services provided, the "bid" construction cost should also be used to determine whether Bott is entitled to the incentive bonus. We disagree. The parties' Agreement establishes the terms of Bott's compensation for work performed under the Agreement. The basic fee and the incentive bonus are to be calculated based upon the actual total construction cost paid to the construction contractor. In order to allow Bott to receive monthly payments prior to the completion of the project, the Agreement provides an alternate method of compensation for the basic service fees. Without this provision, the only basis for compensating Bott for basic services performed would be based on the actual total construction cost, which was unknown until the completion of the entire project. Thus, Bott could not receive any compensation prior to the completion of the construction without the monthly compensation provision. No such alternate method of compensation is provided for the incentive bonus. Under the terms of the Agreement, the sole method of determining whether Bott is entitled to the incentive bonus is based upon the actual total cost of construction paid to the construction contractor and whether that amount is less than $8.2 million. Since the total cost of construction was $8,207,898.31, Bott is not entitled to an incentive bonus under the terms of the Agreement.

To calculate an incentive bonus based upon the estimated "bid" cost of construction would defeat the purpose behind the incentive bonus. The bonus was offered as an incentive to keep the total cost of construction below $8.2 million. If the bonus could be based on the "bid" amount, there would be no motivation for Bott to keep the project costs down. Thus, Bott could have submitted a low bid, and received the bonus regardless of the final cost of the project. Such an interpretation of the incentive bonus provision would render the provision and its purpose meaningless. Additionally, it seems rather elementary that the *same* construction cost figure to determine both the basic ser-

vice fee and the incentive fee is what was expressly contemplated by the parties.

There is no substantial evidence in the record upon which reasonable minds could conclude that the award of $38,314.00 for the incentive bonus was proper. Judgment n.o.v. as to Bott's claim for the incentive bonus was properly granted.

## C. The ISBA's Motion For Judgment N.O.V. On Bott's Claim For Compensation For The Interior Design Claim Was Properly Granted.

At trial, Bott claimed $3,600.00 in damages for interior design fees. On cross-appeal, Bott argues that there is substantial evidence in the record to support the jury's verdict on this claim.

The Agreement specifically classifies interior design services as "additional services." Additional services, under the Agreement, are compensated on an hourly basis, with a $20,000.00 maximum payment for the interior design services. The parties do not dispute that the interior design services are considered additional services under the Agreement. Thus, in order for Bott to receive compensation for the interior design work it performed, Bott was required to keep records of the number of hours worked on the interior design.

During trial Mr. Bott was asked how the $3,600.00 figure for Bott's interior design claim was calculated. In response, Mr. Bott testified that the $3,600.00 figure was merely an estimate of the work performed. Mr. Hoar testified at trial that time sheets were not kept for the interior design work performed by Bott. Absent any evidence of the number of hours worked on the interior design, there is no means of compensating Bott for these services. We conclude that there is no substantial evidence in the record to support Bott's claim for interior design services.

Bott claims that it is excused from complying with the terms of the Agreement to keep time records. Bott asserts that it did not submit requests for payment for the interior work performed during the course of the project because the ISBA informed Bott that

the interior construction work was no longer part of the project and that another interior designer would perform the interior design work. Bott claims that it submitted a request for payment for the interior design services after it discovered, during the lawsuit, that the ISBA had paid for the interior construction and had used Bott's designs. Thus, Bott claims that there is substantial evidence to support the jury's decision that Bott performed the interior design work and that Bott is excused from complying with the Agreement due to the ISBA's actions.

Contrary to Bott's argument, it was not completely unknown to Bott that its designs were being used and that the interior construction was still being performed. During trial, Mr. Bott testified that Bott initially performed work on the interiors and that even after Bott was informed that the interior construction work was to be performed by another interior designer, Bott still implemented and corrected information on the interiors and performed work on some cabinet drawings. The dispute between the parties is not over when Bott filed for this claim, or why there was a delay in Bott's assertion of the claim. At issue is the lack of evidence of hourly work performed to support Bott's claim for the interior design services. Even for the services that were admittedly performed by Bott, there is no substantial evidence in the record of hourly work performed to support Bott's claim for the interior design services. Bott's claim for interior design work is not supported by substantial evidence. We conclude that judgment n.o.v. was proper on this issue.

## IV.

### THE DISTRICT COURT DID NOT ERR IN DENYING THE ISBA'S MOTIONS FOR NEW TRIAL

The decision to grant or deny a motion for new trial generally rests within the sound discretion of the trial court. *O'Dell,* 119 Idaho at 813, 810 P.2d at 1099; *Quick,* 111 Idaho at 766, 727 P.2d at 1194.

The trial court's denial of a new trial will not be overturned without a clear showing of abuse of discretion. *Watson,* 121 Idaho at 655, 827 P.2d at 668. In determining whether there was an abuse of discretion by the trial court, this Court must consider, (1) whether the trial court correctly perceived the issue as one of discretion, (2) whether the trial court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices, and (3) whether the trial court reached its decision through an exercise of reason. *O'Dell,* 119 Idaho at 813, 810 P.2d at 1099; *Sun Valley Shopping Center, Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). In ruling on a motion for new trial, the trial court has the discretion to order a new trial and/or a remittitur in order to correct what it perceives as a miscarriage of justice. *Sanchez v. Galey,* 112 Idaho 609, 614, 733 P.2d 1234, 1239 (1986).

The district court denied the ISBA's motions for new trial pursuant to I.R.C.P. 59(a)(5), (a)(6), and (a)(7).[4] In ruling on the ISBA's motion for new trial on the issue of liability under I.R.C.P. 59(a)(6), the district court explained that the jury's verdict finding that the ISBA breached the Agreement and that Bott substantially performed under the Agreement, was supported by substantial evidence and credible testimony. The district court however stated that it disagreed with the jury's determination of damages. The district court next concluded that there was no basis for granting a new trial pursuant to I.R.C.P. 59(a)(6) on the ISBA's claim for a $136,726.00 set-off. The court stated that the claim was based on the claim that Bott had not substantially performed under the Agreement. The district court disagreed and concluded that substantial evidence supported the jury's verdict.

The court then turned to the issue of damages. Before ruling on the damages issue, the district court deleted $38,314.00 of the jury's damage verdict for the incentive bonus, and $3,600.00 for the interior design services, in accordance with its decision on

---

4. The district court's denial of the ISBA's motion for new trial pursuant to I.R.C.P. 59(a)(7) is not challenged on appeal.

**590**

the ISBA's motion for judgment n.o.v. The district court then proceeded to determine whether a new trial should be granted on the reduced verdict of $157,378.00. The district court concluded that the portion of the jury's verdict totalling $157,378.00 was not contrary to the evidence or against the clear weight of the evidence and thus held that there was no basis for granting a new trial pursuant to I.R.C.P. 59(a)(6). The court further concluded that, after weighing the evidence and comparing the jury's award to what the district court would have awarded, the jury's verdict, as reduced by the elements of damage upon which judgment n.o.v. was granted, was not given under the influence of passion or prejudice. The district court concluded that there was no basis for granting a new trial pursuant to I.R.C.P. 59(a)(5).

Under the Idaho Rules of Civil Procedure, a new trial may be granted on any or all of the issues in an action if the damages awarded are inadequate or excessive, appearing to have been given under the influence of passion or prejudice, I.R.C.P. 59(a)(5), or if the evidence is insufficient to support the verdict or the verdict is contrary to law, I.R.C.P. 59(a)(6). *Sanchez*, 112 Idaho at 614, 733 P.2d at 1239. In determining whether to grant or deny a new trial pursuant to I.R.C.P. 59(a)(6), the trial court is to weigh all of the evidence, including the judge's own determination of the credibility of the witnesses, and determine whether the verdict is supported by the evidence. *Sanchez v. Galey*, 115 Idaho 1064, 1070, 772 P.2d 702, 706 (1989); *Quick*, 111 Idaho at 766, 727 P.2d at 1194. If the trial court is satisfied that the verdict is not supported by or is contrary to the evidence, it may then in its discretion grant a new trial. *O'Dell*, 119 Idaho at 805, 810 P.2d at 1091; *Sanchez*, 115 Idaho at 1070, 772 P.2d at 706. Where a motion for new trial is based upon a claim that the damages are inadequate or excessive pursuant to I.R.C.P. 59(a)(5), the trial court is to weigh the evidence and then compare the jury's award of damages to what the judge would have awarded if there were no jury. *Sanchez*, 112 Idaho at 614, 733 P.2d at 1239. If the disparity between the two awards is so great that it appears to the trial court that the award was rendered under the

influence of passion or prejudice, then a new trial should be granted. *Id.* The trial court must state its reasons for granting or denying a new trial, unless those reasons are evident from the record. *O'Dell*, 119 Idaho at 806, 810 P.2d at 1092.

The ISBA challenges the district court's denial of its motion for new trial and argues that the district court erred in reducing the amount of the jury's general damage verdict prior to making a determination of whether a new trial was warranted. The ISBA also argues that the district court erred in combining its rulings on the motion for judgment n.o.v. and the motion for new trial. The ISBA contends that the district court's denial of the ISBA's motion for new trial is inconsistent with its grant of the ISBA's motion for judgment n.o.v.

It is well established that the trial court must rule on the motions for judgment n.o.v. and for new trial separately. *Quick*, 111 Idaho at 767, 727 P.2d at 1195. The district court complied with this mandate and ruled on the judgment n.o.v. motions separately from the new trial motions. The district court then deleted the portions of Bott's claims for the incentive bonus and for the interior design services from the total jury verdict, based on its conclusion that judgment n.o.v. should be granted on those elements. Once the two elements of damages were deducted from the total damages awarded by the jury verdict, the court ruled on the new trial motions solely on the amount of the reduced verdict. It is within the district court's discretion to identify the elements of a damage claim, based on the evidence presented at trial, and to determine which elements to redact and which elements to approve. The district court's methodology of dividing up the jury's general damage verdict into specific elements of damage as claimed by Bott during trial may be unique, but was not contrary to the evidence presented to the district court during trial. Specifically, the jury's total general verdict mirrored Bott's trial exhibits on damages. Further, neither party argues that the trial court's apportionment in this case was incorrect.

■ We also conclude that there was no merger of the judgment n.o.v. issues and the new trial issues by the district court. The district court is permitted to grant judgment n.o.v. and then determine whether a new trial is proper. Accordingly, we conclude that the district court did not abuse its discretion in denying the ISBA's motion for a new trial.

## V.

## PRE–JUDGMENT INTEREST & POST–JUDGMENT INTEREST

### A. The District Court Had Jurisdiction To Rule On The Issues of Pre-judgment and Post-judgment Interest.

The ISBA argues that the trial court did not have jurisdiction to award pre-judgment or post-judgment interest after the notice of appeal was filed. The trial court entered its ordered awarding pre-judgment and post-judgment interest on October 14, 1994, after the notices of appeal and cross-appeal had been filed.

■ Idaho Appellate Rule 13 provides that upon the filing of a notice of appeal or notice of cross-appeal, all proceedings and execution of all judgments in a civil action in the district court, shall be automatically stayed for a period of 14 days. The Rule permits certain exceptions to the automatic stay of proceedings. I.A.R. 13(b). Under I.A.R. 13(b), the trial court has the authority to, upon a motion, amend findings of fact or conclusions of law, I.A.R. 13(b)(3), to amend the judgment, I.A.R. 13(b)(4), or to rule on any motion under I.R.C.P. 60(a) or (b), I.A.R. 13(b)(6). We conclude that pursuant to I.A.R. 13(b), the district court had the jurisdiction to rule on the issues of pre-judgment and post-judgment interest during the pendency of an appeal.

### B. The ISBA Is Not Immune From Pre-judgment Interest Under The Doctrine Of Sovereign Immunity.

■ The ISBA argues that the district court erred in awarding pre-judgment interest against the ISBA. The ISBA asserts because it is a public instrumentality, the ISBA is immune against the assessment of pre-judgment interest under the doctrine of sovereign immunity. We disagree.

■ It is the general rule that, under the doctrine of sovereign immunity, a governmental unit can only be sued upon its consent. *University of Utah v. Twin Falls County*, 122 Idaho 1010, 1017, 842 P.2d 689, 696 (1992). The same doctrine prevents the assessment of interest on debts of the state, without the state's consent. *Id.*

We conclude that the doctrine of sovereign immunity does not apply to the ISBA. In *Bott I*, 122 Idaho 471, 835 P.2d 1282 (1992), the Court held that the ISBA was a public instrumentality and not a state "agency" for purposes of denying the award of attorney fees under I.C. § 12–117. *Id.* at 480, 835 P.2d at 1289. In so holding, the Court determined that the ISBA was an entity distinct and separate from the state of Idaho. *C.f.* I.C. § 67–6419 (providing that the obligations and debts of the ISBA do not become the obligations and debts of the State). The district court's conclusion that sovereign immunity does not prevent the assessment of pre-judgment interest against the ISBA is affirmed.

### C. The District Court Erred In Awarding Pre-judgment Interest To Bott.

■ The district court awarded pre-judgment interest on those amounts that it concluded were liquidated or capable of ascertainment by a mere mathematical process. The court concluded that pre-judgment interest was proper on the landscaping claim, the splitting of the educational facilities claim, and the roof redesign claims, which totalled $23,749.00, until the time of trial. The district court also awarded pre-judgment interest on the schematic design claim from the time of the entry of the jury's verdict until the entry of the final judgment. The ISBA argues that the district court erred in awarding pre-judgment interest since the damages were not finally ascertainable until the district court ruled on the ISBA's motion for judgment n.o.v. on remand. We agree.

■ A party is entitled to pre-judgment interest under I.C. § 28–22–104 for money due by express contract or when it becomes

due. I.C. § 28–22–104(1), (2). Pre-judgment interest may be awarded only when the principal amount of liability under the contract is liquidated or ascertainable by a mere mathematical calculation. *Ervin Constr. Co. v. Van Orden*, 125 Idaho 695, 704, 874 P.2d 506, 515 (1993). Based on the terms of the Agreement between the parties and based on our earlier decisions in this case, we conclude that the principal amount of liability under the Agreement was not liquidated or readily ascertainable in a fashion to award pre-judgment interest to Bott. The district court's award of pre-judgment interest is reversed.

### D. The District Court Erred In Awarding Post–Judgment Interest Upon a Vacated Judgment.

■ The ISBA asserts that post-judgment interest cannot be awarded on a judgment that was nullified when the district court ordered a new trial and that was subsequently vacated. Because the original judgment was vacated, the ISBA argues that there is no judgment upon which post-judgment interest may accrue. We agree.

The district court's award of post-judgment interest on damages awarded in a vacated judgment was in error. Once the judgment was vacated, there was no judgment upon which a post-judgment interest could be awarded. This Court has held that no interest begins to accrue on a vacated judgment until the entry of a new judgment. *Sanchez*, 115 Idaho at 1067, 772 P.2d at 705. Accordingly, the district court's award of post-judgment interest is reversed.

## VI.

## ATTORNEY FEES

The ISBA argues that the district court erred in awarding attorney fees. Bott hired attorneys Raymond Powers and Kenneth Nyman to represent it in this matter. Mr. Powers was hired by Bott's professional malpractice insurance carrier to defend Bott against the ISBA's set-off claim, based upon the ISBA's allegation that Bott inadequately performed the contract. The ISBA asserts that, because counsel for Bott was hired by Bott's professional malpractice insurance car-

rier to defend Bott against tort claims (i.e. malpractice claims), counsel may not recover attorney fees under I.C. § 12–120, since attorney fees are not recoverable under I.C. § 12–120 where the action sounds in tort.

Pursuant to this Court's holding in *Bott I*, the district court awarded attorney fees pursuant to I.C. § 12–120(3) and also pursuant to I.R.C.P. 54(e)(3). The district court concluded that the most reasonable approach to resolving the issue of attorney fees was to consider the underlying character of the case. The district court concluded that the nature of the action was in contract and that attorney fees were proper under I.C. § 12–120(3), regardless of the fact that Bott's insurance carrier provided part of Bott's representation.

■ The calculation of reasonable attorney fees is within the discretion of the trial court. *Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.*, 127 Idaho at 47, 896 P.2d at 955. The determination of whether an award of attorney fees is proper requires an analysis of the character of the underlying law suit and does not look at who is counsel representing the party, or who hired that counsel. In *Bott I*, this Court concluded that the gravamen of the law suit was a commercial transaction such that I.C. § 12–120(3) was a proper basis for awarding attorney fees. *Bott I*, 122 Idaho at 481, 835 P.2d at 1292. The district court looked to the nature of the underlying action and concluded that attorney fees were proper. In doing so, the court indicated that it understood that the award of attorney fees is a discretionary act, acted within the boundaries of its discretion and consistent with the proper legal standards, and reached its conclusion through an exercise of reason. Accordingly, the district court did not abuse its discretion, and the award of attorney fees is affirmed.

## VII.

## CONCLUSION

In conclusion, the ISBA's motion for judgment n.o.v. is granted on Bott's claim for the schematic redesign work, the interior design work, and the incentive bonus. The district

court's denial of the ISBA's motion for a new trial is affirmed. We conclude that the district court had jurisdiction to rule on the issues of pre-judgment and post-judgment interest and affirm the district court's conclusion that the ISBA is not immune from pre-judgment interest under the doctrine of sovereign immunity. We reverse the district court's award of pre-judgment and post-judgment interest and affirm the district court's award of attorney fees and costs. No costs or attorney fees are awarded on appeal.

SCHROEDER, J., and TRANSTRUM and WOOD, JJ. Pro Tem., concur.

JOHNSON, Justice, concurring in part and dissenting in part.

I concur in all of the Court's opinion, except part IV (The District Court Did Not Err in Denying the ISBA's Motions for New Trial). In my view, in considering the motion for new trial, the trial court should have considered the amount of the jury's verdict, rather than the reduced damage award the trial court arrived at by granting judgment notwithstanding the verdict. By first reducing the jury's verdict, the trial court inappropriately mixed its functions under I.R.C.P. 50(b) and its functions under I.R.C.P. 59(a)(5) and (6). I do not understand how the trial court could assess the excessiveness of the amount awarded by the jury or whether the jury's award was not supported by sufficient evidence or was against the law, when the trial court only assessed these factors in relationship to the trial court's award, not the jury's award.