987 P.2d 314

EASTERN IDAHO AGRICULTURAL CREDIT ASSOCIATION, a federally chartered corporation, Plaintiff–Appellant,

v.

Ira L. NEIBAUR; Darwin P. Neibaur; June G. Neibaur, Steve Neibaur, Burke Neibaur, Ira Neibaur, Renea Hartley, Corinne Jones and Dana Lee Dorsey d/b/a Darwin Neibaur Farms, an Idaho general partnership; June G. Neibaur; and Monica (Neibaur) Davis, Defendants–Respondents,

and

Valley Bank of Idaho, N.A. n/k/a Key Bank of Idaho, an Idaho banking corporation; United States of America acting through Department of Treasury–Internal Revenue Service; Idaho State Tax Commission; Paul Chemical & Fertilizer, Inc.; Credit Bureau of Rupert, Inc.; and Does I through V, inclusive, Defendants.

No. 24429.

Supreme Court of Idaho,
Twin Falls, March 1999 Term.

Sept. 14, 1999.

[redacted]

[redacted]

[redacted]

[redacted]

Racine, Olson, Nye, Budge & Bailey, Pocatello, for appellant. John B. Ingelstrom argued.

Ling, Nielsen & Robinson, Burley, for respondents June Neibaur and Monica Davis. Brent T. Robinson argued; Westberg, McCabe & Collins, Boise, for respondent Neibaur Farms. Paul Larry Westberg argued.

Jensen & Burr–Jones, Burley, for respondent Ira Neibaur. Kent D. Jensen argued.

SCHROEDER, Justice.

Eastern Idaho Agricultural Credit Association (EIACA) appeals the dismissal of its action on promissory notes executed by Ira and Monica Neibaur in connection with farm loans made by EIACA. The action also sought foreclosure of real estate mortgages executed by Darwin Neibaur Farms, a partnership, securing in part the loans.[1] This appeal arises from the second legal action brought by EIACA on its claim. The first action was initiated in 1992 and was dismissed in 1994 by the district court for EIACA's failure to provide the statutory notices required by the Agricultural Credit Act of 1987(Act). That dismissal was affirmed by this Court in *Eastern Idaho Agricultural Credit Ass'n v. Neibaur,* 130 Idaho 623, 944 P.2d 1386 (1997) (*Neibaur I*).

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

On January 18, 1991, Ira and Monica Neibaur issued a promissory note in favor of EIACA and agreed to pay the principal sum of $612,683. On November 25, 1991, they executed another promissory note in the amount of $11,670, payable to EIACA. The promissory notes were secured by personal and real property owned by Ira and Monica Neibaur and by personal and real property owned by Darwin Neibaur Farms.

EIACA filed a complaint for foreclosure against the Neibaurs in 1992, alleging that the notes were due and payable in full on February 1, 1992, and that $212,935.19 in combined principal and interest remained outstanding on the notes. *Neibaur I,* 130 Idaho at 625, 944 P.2d at 1388. Prior to filing the action in 1992, EIACA sent a letter to the Neibaurs, dated January 21, 1992, indicating that their promissory notes "may be" distressed and provided a restructuring application and copy of the restructuring policy. *Id.* The letter stated that the restructuring application was due by March 12, 1992. *Id.*

EIACA's complaint alleged that the Neibaurs did not submit a timely restructuring application and, thus, all restructure rights under the Act had expired. EIACA sent a letter to the Neibaurs dated May 14, 1992, demanding full payment for the amounts in default on the promissory notes. The May letter acknowledged that the Neibaurs submitted a restructure application dated April

1. Since the issues in this appeal apply in most instances equally to all defendants-respondents, the defendants-respondents are referred to collectively as the "Neibaurs," except where the context requires specific reference to either the individuals or the partnership.

8, 1992, to EIACA on April 24, 1992, but the May letter advised that the application was not timely and that EIACA would not consider it. *Id.*

Both parties filed motions for summary judgment. On May 31, 1994, the district court denied EIACA's motion for summary judgment and granted the Neibaurs' motion for summary judgment. The district court concluded that because the loan was not due and because EIACA had not determined that the loan was distressed, the notice letter sent to the Neibaurs was premature and failed to meet the federal requirements for restructuring the Neibaurs' loans. *Id.* EIACA appealed the district court's decision. This Court affirmed the district court in an opinion released on March 7, 1997. On August 27, 1997, the Court issued a substitute opinion affirming the dismissal of EIACA's complaint for foreclosure without prejudice. *Id.* at 627, 944 P.2d at 1390.

Prior to the release of this Court's opinion in *Neibaur I*, but after oral argument, EIACA sent a new notice to the Neibaurs on December 6, 1996. The 1996 notice advised the Neibaurs that the loan had been determined to be distressed, as required by 12 U.S.C. § 2202a(b)(1), and that the Neibaurs had the right to submit an application for loan restructuring. A complaint initiating the present action was filed by EIACA twelve days later on December 18, 1996, in an apparent attempt to avoid expiration of the statute of limitations.

The Neibaurs removed the matter to the United States District Court and moved to dismiss EIACA's complaint. The federal court concluded that it did not have subject matter jurisdiction and remanded the case to Idaho state court on June 24, 1997. The Neibaurs renewed their motion to dismiss in state district court on August 6, 1997.

On September 11, 1997, EIACA formally considered and denied the restructure application submitted by Ira Neibaur on April 24, 1992. The district court entered its Opinion and Order dismissing the action on November 18, 1997. EIACA filed a motion to alter or amend or for reconsideration, but the motion was denied. On December 22, 1997, EIACA filed a notice of appeal. The final amended judgment was entered on January 22, 1998, dismissing without prejudice EIACA's complaint and awarding costs and attorney fees to the Neibaurs. Thereafter, EIACA filed an amended notice of appeal.

## II.

### EIACA COULD NOT RELY ON ITS CONSIDERATION OF THE RESTRUCTURE APPLICATION FIVE YEARS AFTER SUBMISSION OF THE APPLICATION.

EIACA argues that it has now formally evaluated the Neibaurs' April 24, 1992, restructure application and determined that the loan does not qualify for restructuring. EIACA relies on concurring opinions in *Neibaur I* in which two justices wrote they would have affirmed dismissal of EIACA's complaint based on 12 U.S.C. § 2202a(b)(3) which provides:

> No qualified lender may foreclose or continue any foreclosure proceeding with respect to any distressed loan before the lender has completed any pending consideration of the loan for restructuring under this section.

12 U.S.C. § 2202a(b)(3) (1989). The justices stated their view that § 2202a(b)(3) required EIACA to complete consideration of the Neibaurs' 1992 restructure application before foreclosing. *Neibaur I*, 130 Idaho at 629, 944 P.2d at 1392 (Johnson, J., concurring in result). The concurrence reasoned that by not considering the application because of the alleged untimeliness, the application was still pending and, therefore, the institution of foreclosure proceedings was in violation of § 2202a(b)(3). *Id.* On the basis of this language, EIACA maintains that it was entitled to formally consider the Neibaurs' five-year-old restructure application and cure the defect noted by the concurring justices. However, EIACA's argument that it has now considered the application and cured the deficiency identified in *Neibaur I* fails.

■ Initially, the concurring opinion is not the holding of the Court. Nothing in the majority's opinion suggests that the restructure application survived beyond the

improper filing of the complaint in *Neibaur I*. Nevertheless, assuming that EIACA could properly consider the Neibaurs' 1992 restructure application five years later, EIACA would have to acknowledge that the application was in fact viable and pending at the time *Neibaur I* was filed, as the concurring justices perceived. If the application was pending and undetermined at the time *Neibaur I* was filed, it was similarly pending and undetermined when the present action was filed on December 18, 1996. Since EIACA did not purport to consider the Neibaurs' 1992 restructure application until September 11, 1997, EIACA has again run afoul of § 2202a(b)(3), subjecting this action to dismissal.

EIACA's argument fails under the position stated in the concurring opinion. It also fails under the majority opinion of the Court which does not hold or indicate that the restructure application survived beyond the improper filing of the complaint in *Neibaur I*. Although the Act does not provide a time limit on how long the lender has to consider a restructure application, five years is unreasonable. Considering the 1992 application in 1997 does not meet the statutory goals behind restructuring applications.

### III.

### EIACA IS PRECLUDED FROM RELITIGATING THE VALIDITY OF THE 1992 NOTICE UNDER 12 U.S.C. § 2202a(b)(2).

▪ EIACA argues that the January 21, 1992, notice complied with 12 U.S.C. § 2202a(b)(2) [2] because EIACA's second foreclosure action was filed on December 18, 1996, more than forty-five days after the 1992 notice was sent. EIACA maintains that § 2202a(b)(2) does not require that a lender make a determination that a borrower's loan is distressed in all cases before notice is sent and before each foreclosure action. Rather, § 2202a(b)(2)'s notice requirement applies to any borrower prior to foreclosure, unlike

subsections (b)(1) and (b)(3), which by their terms specifically apply to distressed loans. Thus, irrespective of whether EIACA made a distress determination prior to its 1992 notice, the notice complied with § 2202a(b)(2).

In making this argument EIACA is attempting to litigate an issue that was already addressed in *Neibaur I*. In *Neibaur I*, this Court found that the 1992 notice was deficient. 130 Idaho at 627, 944 P.2d at 1390. In the present case EIACA is trying to relitigate the sufficiency of the 1992 notice by recasting the sufficiency issue in terms of the December 18, 1996, complaint. Assuming, *arguendo*, that EIACA's statutory construction argument is correct, the 1992 notice would not only satisfy § 2202a(b)(2) with respect to the December 1996 complaint, but it would also satisfy § 2202a(b)(2) with respect to the July 1992 complaint. Consequently, EIACA could have raised this statutory construction argument in *Neibaur I*, but did not do so.

▪ The doctrine of collateral estoppel, also known as issue preclusion, bars EIACA's attempt to reargue the sufficiency of the 1992 notice under a new theory in the present action.

To determine whether the doctrine of collateral estoppel or issue preclusion is applicable [the Court must] ask: (1) whether the party against whom the prior decision is asserted had a full and fair opportunity to litigate the issue in the earlier case; (2) whether the issue decided in the prior case was identical with one presented in the subsequent litigation; (3) whether the issue was actually decided in the prior litigation; (4) whether there was a final judgment on the merits; and (5) whether the party against whom the doctrine is asserted was a party or privy of a party to the prior adjudication.

*Rincover v. State, Dep't of Finance Sec. Bureau*, 128 Idaho 653, 657–58, 917 P.2d 1293, 1297–98 (1996). The sufficiency of the 1992

---

2. Section 2202a(b)(2) provides:
 Not later than 45 days before any qualified lender begins foreclosure proceedings with respect to a loan outstanding to any borrower, the lender shall notify the borrower that the

loan may be suitable for restructuring and that the lender will review any such suitable loan for restructuring....
12 U.S.C. § 2202a(b)(2) (1989).

notice was an issue actually decided in *Neibaur I*. EIACA had a "full and fair opportunity" in *Neibaur I* to raise the statutory construction argument set. forth above, but EIACA did not make the argument.

■ The district court reasoned that, because *Neibaur I* affirmed the dismissal without prejudice, there was not a final judgment on the merits in the prior litigation, a required element of issue preclusion. A dismissal without prejudice usually does not result in issue preclusion, *see, e.g., McConnell v. Attorney General of Texas*, 878 S.W.2d 281, 283 (Tex.Ct.App.1994); *Haavisto v. Perpich*, 498 N.W.2d 746, 750 (Minn.Ct. App.1993), *rev'd on other grounds*, 520 N.W.2d 727 (Minn.1994), but the circumstances presented in this case are distinguishable. There has been no final judgment on the merits concerning EIACA's right to foreclosure, but there has been a final judgment on the merits concerning whether the 1992 notice was defective.

■ In addressing the issue of finality of judgments, the Restatement (Second) of Judgments recognizes that while a judgment may not be final for purposes of merger and bar (*i.e.*, claim preclusion), it may be final for purposes of issue preclusion. RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982) ("The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."). Under Comment g, entitled, "*Criteria for determining finality in the application of issue preclusion,*" the Restatement reads:

> [P]reclusion should be refused if the [prior] decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.

*Id.* § 13 cmt. g. *See also id.* § 27 cmt. o (recognizing that if a judgment rendered by

a court of first instance is affirmed by an appellate court and a final judgment is entered by the appellate court, the latter judgment is conclusive between the parties).

In *Neibaur I*, EIACA was given a full and fair opportunity to litigate the sufficiency of the 1992 notice under § 2202a(b)(2), the district court supported its decision with a reasoned opinion, and the decision was in fact reviewed on appeal. Accordingly, for purposes of issue preclusion, the district court's order dismissing EIACA's complaint in *Neibaur I* constitutes a final judgment with respect to the question of whether the 1992 notice was defective.

The district court in the instant action concluded that the fact that there were "[n]o findings of fact or conclusions of law ... entered in [EIACA's] first action," was evidence that "there was no [final] judgment on the merits of that case." In making this conclusion, the district court relied on *Sorenson v. Adams*, 98 Idaho 708, 571 P.2d 769 (1977) *overruled in part*, 102 Idaho 31, 36, 624 P.2d 413, 418 (1981), which held that when a trial court, in a non-jury case, grants a defendant's motion for involuntary dismissal at the close of the plaintiff's presentation, the judgment which it renders is a judgment on the merits which must be accompanied by findings of fact and conclusions of law. *Id.* at 712, 571 P.2d at 773. While the actual judgment dismissing EIACA's complaint without prejudice in *Neibaur I* does not contain any factual findings or conclusions of law, the district court did render a Memorandum Opinion and Order regarding the parties' cross-motions for summary judgment. In this Memorandum Opinion and Order, the district court made extensive factual findings and conclusions of law with respect to the sufficiency of EIACA's 1992 notice under the Code of Federal Regulations. The district court's decision was not "avowedly tentative" with respect to this issue.

■ The district court's decision in *Neibaur I* was a final judgment on the merits. "A judgment is on the merits when it amounts to.a decision as to the respective rights and liabilities of the parties, based on the ultimate fact or state of facts disclosed by

the pleadings or evidence, or both, and on which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions." 50 C.J.S. *Judgment* § 728 (1997). This Court has determined the rights and liabilities of the parties with respect to the 1992 notice and whether dismissal was appropriate in *Neibaur I.* Because there has been a final judgment on the merits regarding the sufficiency of the 1992 notice, EIACA may not raise this issue again.

## IV.

### THE RUNNING OF A STATUTE OF LIMITATIONS IS NOT A DISSIPATION OF COLLATERAL CONTEMPLATED BY 12 U.S.C. § 2202a(j).

EIACA argues that even if this Court should conclude that EIACA did not comply with 12 U.S.C. § 2202a(b)(2), the foreclosure action is authorized by the exception contained in 12 U.S.C. § 2202a(j).

Section 2202a(j) provides:

This section shall not be construed to prevent any qualified lender from enforcing any contractual provision that allows the lender to foreclose a loan or from taking such other lawful action as the lender deems appropriate, if the lender has reasonable grounds to believe that the loan collateral will be destroyed, dissipated, consumed, concealed, or permanently removed from the State in which the collateral is located.

12 U.S.C. § 2202a(j) (1989). EIACA maintains that if the statute of limitations were to run, the collateral securing the loans would be dissipated or destroyed. The district court interpreted the language of § 2202a(j) literally. The district court concluded

that the language of the statute indicates that an exception to § 2202a(b)(2) exists, when the loan collateral is threatened to be **physically** diminished or destroyed by the individual that has used the property to secure the loan. By using the terms "destroyed, dissipated, consumed, concealed, or permanently removed," the drafters clearly indicate that the loan collateral is to be altered or affected in some physical manner by the actions of the individual

which has put the property up for collateral. The statute does not provide an exception for a lender that will lose its security interest in property ... by letting the statute of limitations run.

(Emphasis added). EIACA asserts that the district court erred in finding that the statute contemplates only physical destruction of the collateral, maintaining that use of the term "dissipated" in the statute contemplates nonphysical injury such as a loss of a right in connection with the collateral. EIACA sets forth various dictionary definitions to support its argument that the word "dissipate" does not require physical injury as a necessary element and thus the statute also includes non-physical losses.

Where the language of the statute is clear and unambiguous, the Court will not engage in statutory interpretation. *City of Boise v. Industrial Comm'n,* 129 Idaho 906, 909, 935 P.2d 169, 172 (1997). "The starting point for any statutory interpretation is the literal wording of the statute, and [this Court] will give the statute's language its plain, obvious, and rational meaning." *Id.* It is clear that § 2202a(j) is concerned with protecting the physical integrity of the lender's collateral interest. Aside from the term "dissipated," all of the other terms—destroyed, consumed, concealed or permanently removed—clearly refer to the physical state of the collateral. When reading the term in context, "dissipated" only relates to the physical well-being of the collateral.

EIACA also tries to find support in the Code of Federal Regulations (C.F.R.). Section 614.4519(b), title 12 of the C.F.R. states in relevant part:

This section shall not prevent a lender from taking any action necessary to avoid the dissipation of assets, or the destruction, diversion or deterioration of collateral if the lender has reasonable grounds to believe that such dissipation, destruction, diversion or deterioration may occur.

12 C.F.R. § 614.4519(b). EIACA argues that "[i]t is significant that the term 'dissipation' is separated from the grouping of the terms 'destruction,' 'diversion,' and 'deterioration' in the C.F.R. description." However, giving the literal wording of the regulation its plain and obvious meaning, it is clear that the implementing regulation relates to the

physical integrity of the loan collateral. The implementing regulations interpreting the interaction of §§ 2202a(b) and 2202a(j) specifically indicate that the relief found in § 2202a(j) applies to a "dissipation of assets." The regulations make no mention of the expiration of a statute of limitations. Loss of a remedy as a result of a party's failure to exercise the remedy in a proper and timely manner is not what was contemplated by the statute or the regulation.

## V.

## THE NEIBAURS ARE NOT REQUIRED TO PROVE PREJUDICE APART FROM EIACA'S FAILURE TO GIVE PROPER NOTICE.

 EIACA argues that regardless of whether it failed to comply with the provisions of the Act, the Neibaurs were not prejudiced because they were given ample opportunity to submit a restructure application. EIACA relies heavily on the language found in *Neibaur I* wherein the Court stated:

We hold that the January 21, 1992 notice letter was not sufficient to trigger respondents' right to 45 days notice that respondents' loan may be suitable for restructuring. 12 U.S.C.A. § 2202a(b)(1), (2). Respondents were **prejudiced** by Credit Association's failure to consider respondents' April 24, 1992 restructure application.

*Neibaur I*, 130 Idaho at 627, 944 P.2d at 1390 (emphasis added).

The Court's basis for affirming the district court in *Neibaur I* was that EIACA did not comply with the statutory notice requirements. No further showing of prejudice was necessary. The Court has already determined that there was prejudice by failure to afford the Neibaurs their statutory right. No other prejudice was shown in *Neibaur I*, and no other showing is required now.

## VI.

## THE DISTRICT COURT DID NOT ERR IN DECLINING TO APPLY EQUITABLE ESTOPPEL TO RELIEVE EIACA FROM COMPLYING WITH 12 U.S.C. § 2202a(b).

 EIACA claims that because Ira Neibaur stated in a deposition that he did not intend to repay his loans and that he did not want EIACA to consider his April 1992 restructure application, the Neibaurs should be precluded from arguing that the foreclosure action should be dismissed as a result of either (1) EIACA's failure to wait forty-five days prior to filing the December 1996 complaint, or (2) EIACA filing the complaint prior to considering the April 1992 restructure application. EIACA refers to waiver and estoppel in its argument, but cites no authority regarding estoppel. According to *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996), this Court generally will not consider an issue which is not supported by both argument and authority.

 Despite the *Zichko* deficiency in EIACA's brief, the Court concludes that EIACA's equitable arguments are without merit. Both estoppel and waiver require that the party asserting the equitable doctrines have reasonably relied and altered his or her position to his or her detriment. *See Margaret H. Wayne Trust v. Lipsky*, 123 Idaho 253, 256, 846 P.2d 904, 907 (1993); *Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill*, 103 Idaho 19, 22, 644 P.2d 341, 344 (1982). There is no evidence that EIACA relied on anything to its detriment. The deposition of Ira Neibaur was taken in September 1997. EIACA filed its complaint in December 1996. Nothing Ira Neibaur stated in his deposition was relied on by EIACA when it prematurely filed the second foreclosure complaint.

 EIACA also argues the doctrine of quasi-estoppel which

has its basis in acceptance of benefits; it precludes a party from asserting to another's disadvantage a right inconsistent with a position previously taken by him or her. The doctrine applies where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced or of which he accepted a benefit. The act of the party against whom the estoppel is sought must have gained some advantage to himself or produced some disadvantage to another; or the person invoking the estoppel must have been induced to change his position.

*Mitchell v. Zilog, Inc.*, 125 Idaho 709, 715, 874 P.2d 520, 526 (1994) (citations omitted); *see Willig v. State, Dep't of Health & Welfare*, 127 Idaho 259, 261, 899 P.2d 969, 971 (1995). Although Ira Neibaur testified that he did not intend to repay his loans and that he did not want his April 1992 restructure application considered, this has no bearing on EIACA's obligation to comply with the statutory notice provisions of the Act. For quasi-estoppel to apply, the Neibaurs must have gained some advantage or produced some disadvantage to EIACA. *Mitchell*, 125 Idaho at 715, 874 P.2d at 526. EIACA has presented no evidence of either advantage to the Neibaurs or disadvantage to EIACA. The Neibaurs are entitled to rely on the statute and can defend on that basis. They have never taken a different position.

■ Furthermore, for quasi-estoppel to apply, it must be unconscionable to allow the party to be estopped to maintain an inconsistent position. *Id.* If one were to assume the Neibaurs' position to be inconsistent based on Ira Neibaur's deposition testimony, their position cannot be said to rise to the level of unconscionability. The second foreclosure complaint was dismissed by the district court without prejudice. The underlying cause of action still exists. The reason a problem exists is the possible preclusive effect of the statute of limitations. The Neibaurs did not create that problem.

EIACA's argument is an extension of the prejudice argument discussed in Section V. EIACA has not demonstrated that the Neibaurs were advantaged or that it was disadvantaged by any alleged change in position by the Neibaurs, nor is it unconscionable for the Neibaurs to insist on their statutory rights. Quasi-estoppel is inapplicable to this case.

## VII.

## EIACA HAS NOT BEEN DENIED ITS "DAY IN COURT" IF THE COURT AFFIRMS THE DISMISSAL WITHOUT PREJUDICE.

■ EIACA asserts that if this Court affirms the district court's dismissal of this action, it will be denied its "day in court" because the statute of limitations has run. EIACA relies on *Zaleha v. Rosholt, Robertson & Tucker, Chtd.*, 129 Idaho 532, 927 P.2d 925 (Ct.App.1996). In *Zaleha*, the plaintiff filed two complaints—one in state district court and one in federal court—one day before the statute of limitations had run. Both complaints consisted of the same claim and involved the same parties. *Id.* at 533, 927 P.2d at 926. The defendants filed a motion under Rule 12(b)(8) (1996) of the Idaho Rules of Civil Procedure to dismiss the state action on the basis that there was another suit pending in federal court. The district court dismissed Zaleha's state court action. *Id.* Zaleha appealed, arguing that at the time the district court dismissed his action, the federal court had not decided whether to entertain his state law claims. Zaleha argued that if the dismissal were allowed to stand and if the federal court refused to hear his state law claims, he would be without a forum to litigate those claims because the statute of limitations had run. *Id.* The Court of Appeals ultimately determined that if the federal court chose not to exercise jurisdiction, "Zaleha would never have his day in court and would be denied a forum in which to proceed." *Id.* at 534–35, 927 P.2d at 927–28.

EIACA's reliance on *Zaleha* is misplaced. The *Zaleha* court carved out a narrow exception to earlier decisions upholding dismissals on the basis there was another action pending under I.R.C.P. 12(b)(8) (1996). *See Roberts v. Hollandsworth*, 101 Idaho 522, 524–25, 616 P.2d 1058, 1060–61 (1980), *Diet Center, Inc. v. Basford*, 124 Idaho 20, 22–23, 855 P.2d 481, 483–84 (Ct.App.1993). In *Zaleha*, the Court of Appeals explained that in *Roberts* and *Diet Center*, there was no question of jurisdiction in the primary tribunal, whereas in its case (*Zaleha*), a forum had not been established. *Zaleha*, 129 Idaho at 534, 927 P.2d at 927. *Zaleha* does not stand for the proposition that if a statute of limitations is about to run or has run, the district court is restrained from dismissing a case that is otherwise properly dismissable because the plaintiff will be denied its day in court.

EIACA has been "in court" for five years. Although EIACA has not been litigating the underlying cause of action, EIACA has had

plenty of opportunity to do so. When EIACA was first confronted with the argument that it had not complied with the statutory notice requirements under § 2202a(b), it could have simply started over. EIACA argues that the idea of starting over would be "tantamount to arguing that a party should be penalized for exercising its right of appeal." No one questions EIACA's right to go through the appellate process to try to vindicate its position in *Neibaur I*. However, EIACA had to make a tactical decision of whether to continue with its appeal in the hopes of being the prevailing party and making the statute of limitations a moot issue (because the complaint would relate back to its initial filing), or dismiss its appeal (because of the possibility of losing and having the decision rendered after expiration of the statute of limitations). EIACA decided to pursue the former. EIACA has not been denied its day in court. It balanced potential benefits and detriments and chose to use its day in court in the manner it thought most advantageous.

## VIII.

### THE DISTRICT COURT DID NOT ERR IN CALCULATING AND AWARDING ATTORNEY FEES TO THE NEIBAURS.

The district court determined that the Neibaurs were entitled to attorney fees under section 12–120(3) of the Idaho Code (I.C.). *Neibaur I*, 130 Idaho at 628, 944 P.2d at 1391. EIACA argues that the amount of attorney fees awarded by the district court was unreasonable.

 "The calculation of reasonable attorney fees is within the discretion of the trial court." *Bott v. Idaho State Bldg. Auth.*, 128 Idaho 580, 592, 917 P.2d 737, 749 (1996). The burden is on the party opposing the award to demonstrate that the district court abused its discretion—in this case EIACA. *Neibaur I*, 130 Idaho at 628, 944 P.2d at 1391. To determine whether the trial court abused its discretion, this Court makes a three-step inquiry: (1) whether the lower court perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of that discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989); *see Bott*, 128 Idaho at 592, 917 P.2d at 749.

 EIACA claims that the $16,000 awarded in attorney fees is "unconscionable" and points to specific instances of claim inconsistencies. Nothing in the record, however, establishes that the district court abused its discretion. Under the *Hedger* standard: (1) it appears that the district court perceived that the calculation of attorney fees was discretionary—evidenced by the fact that it reduced the amount of attorney fees for the federal court action by one-half; (2) the district court appears to have acted within the outer boundaries of that discretion and consistent with the applicable legal standards—the order awarding attorney fees specifically states that the district court took into consideration the factors in I.R.C.P. 54(e)(3); and (3) the district court appears to have arrived at its amount by an exercise of reason—again evidenced by the fact that it deducted amounts concerning the federal court action. The district court's award and calculation of attorney fees is affirmed.

## IX.

### CONCLUSION

The district court's dismissal of the second foreclosure complaint is affirmed. The Neibaurs are awarded costs and attorney fees on appeal.

Chief Justice TROUT and Justices SILAK, WALTERS and KIDWELL concur.